## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ALNYLAM PHARMACEUTICALS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 22-336-CFC |
| v. | ) (CONSOLIDATED) |
| | ) |
| PFIZER INC. and PHARMACIA & UPJOHN CO. LLC | ) |
| | ) **JURY TRIAL** |
| Defendants. | ) **DEMANDED** |
| | ) |
| PFIZER INC., PHARMACIA & UPJOHN CO. LLC, BIONTECH SE, and BIONTECH MANUFACTURING GMBH, | ) |
| | ) |
| | ) |
| | ) |
| Counterclaim Plaintiffs, | ) |
| | ) |
| ALNYLAM PHARMACEUTICALS, INC, | ) |
| | ) |
| Counterclaim Defendant. | ) |

## RESPONSE TO ANSWER AND COUNTERCLAIMS

Alnylam Pharmaceuticals, Inc. ("Alnylam") hereby responds to the Answer

and Counterclaims of Pfizer, Inc., Pharmacia & Upjohn Co. LLC, BioNTech SE,

and BioNTech Manufacturing GmBh (collectively, "Counterclaimants") as

follows:

## NATURE OF THE ACTION[1]

1.     Counterclaimants on personal knowledge as to their own acts, and on information and belief as to all others based on their own and their attorneys' investigation, and without admitting the allegations of Plaintiff other than those expressly admitted herein, bring the following counterclaims against Alnylam for declaratory judgment that U.S. Pat. No. 11,382,979 (the "'979 Patent" or "patent-in-suit") is invalid and not infringed by Counterclaimants, and that the '979 Patent is unenforceable for patent misuse.

**ANSWER:** Alnylam denies that the Defendants' COVID-19 Vaccine does not infringe the '979 Patent.  Alnylam denies that the '979 Patent is invalid. Alnylam denies that the '979 Patent is unenforceable due to patent misuse. Alnylam admits that Counterclaimants' Counterclaims purport to state actions for declaratory judgment of non-infringement, invalidity, and unenforceability.  The allegations in paragraph 1 constitute a legal conclusion that requires no response, but to the extent a response is required, except as expressly admitted herein, Alnylam denies each and every allegation of paragraph 1.

2.     Counterclaimants repeat and incorporate by reference each of the foregoing paragraphs of Defendants' Answer and Affirmative Defenses to the Complaint, as if fully set forth herein.

---

[1] Alnylam understands that the headings throughout the Answer and Counterclaim are not allegations that require response, but to the extent that they are, Alnylam denies each.

**ANSWER:** Alnylam incorporates by reference all of the paragraphs of its Complaint. Alnylam Pharmaceuticals, Inc. v. Pfizer Inc. et al, No. 1:22-cv-00924-CFC (D. Del.) D.I. 1.[2]

## THE PARTIES

3.     Pfizer is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 235 East 42nd Street, New York, New York 10017.

**ANSWER:** On information and belief, and as alleged by Counterclaimants in their Counterclaims, Pfizer is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 235 East 42nd Street, New York, New York 10017.

4.     Pharmacia is a corporation organized and existing under the laws of the state of Delaware, with a principal place of business at 7000 Portage Road, Kalamazoo, MI 49001. Pharmacia is a subsidiary of Defendant Pfizer Inc.

**ANSWER:** On information and belief, and as alleged by Counterclaimants in their Counterclaims, Pharmacia is a corporation organized and existing under the laws of the state of Delaware, with a principal place of business at 7000 Portage Road Kalamazoo, MI 49001.   On information and belief, and as alleged by Counterclaimants in their Counterclaims, Pharmacia is a subsidiary of Defendant Pfizer Inc.

---

[2] Complaint was filed prior to consolidation of action.

5.      BioNTech SE is a corporation organized and existing under the laws of Germany with a principal place of business at An der Goldgrube 12, D-55131 Mainz, Germany.

**ANSWER:** On information and belief, and as alleged by Counterclaimants in their Counterclaims, BioNTech SE is a corporation organized and existing under the laws of Germany with a principal place of business at An der Goldgrube 12, D-55131 Mainz, Germany.

6.      BioNTech Manufacturing GmbH ("BioNTech Manufacturing") is a corporation organized and existing under the laws of Germany with a principal place of business at An der Goldgrube 12, D-55131 Mainz, Germany. BioNTech Manufacturing is the applicant for the Biologics License Application (BLA) for COMIRNATY® (COVID-19 Vaccine, mRNA) in partnership with Pfizer.

**ANSWER:** On information and belief, and as alleged by Counterclaimants in their Counterclaims, BioNTech Manufacturing GmbH ("BioNTech Manufacturing") is a corporation organized and existing under the laws of Germany with a principal place of business at An der Goldgrube 12, D-55131 Mainz, Germany.  The BLA Approval Letter (*Alnylam Pharmaceuticals, Inc. v. Pfizer Inc. et al*, No. 1:22-cv-00924-CFC (D. Del.) D.I. 1, Ex. 3) is addressed as follows:

BioNTech Manufacturing GmbH
Attention: Amit Patel
Pfizer Inc. 235 East 42nd Street
New York, NY 10017

The BLA Approval Letter speaks for itself.  Alnylam lacks the information to admit or deny whether "BioNTech Manufacturing is the applicant in

4

partnership with Pfizer." To the extent that paragraph 6 contains legal

conclusions, it requires no response. Except as expressly admitted herein,

Alnylam denies each and every allegation of paragraph 6.

7.      According to its Complaint (D.I. 1), Alnylam is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business at 675 West Kendall Street, Henri A. Termeer Square, Cambridge, Massachusetts 02142. According to its Complaint, Alnylam is the owner by assignment of the '979 Patent.

**ANSWER:** Admitted.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction over these Counterclaims for declaratory judgment pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202 based on an actual controversy among the parties arising under the Patent Laws of the United States, 35 U.S.C. § 1, et seq.

**ANSWER:** The allegation of jurisdiction in paragraph 8 of the

Counterclaims constitutes a legal conclusion that requires no response. To the

extent a response is required, Alnylam admits that the Counterclaims purport to

state an action that arises under 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202.

9.      Personal jurisdiction over Alnylam is proper because, inter alia according to its Complaint, Alnylam is a corporation organized and existing under the laws of the State of Delaware, and because Alnylam has consented to the personal jurisdiction of the Court by commencing its action for patent infringement in this Judicial District, as set forth in its Complaint.

**ANSWER:** The allegation of jurisdiction in paragraph 9 of the

Counterclaims constitutes a legal conclusion that requires no response. To the

extent a response is required, Alnylam does not contest that this Court has personal jurisdiction over Alnylam for the purposes of this action. Except as expressly admitted herein, Alnylam denies each and every allegation of paragraph 9.

10.    Venue is proper in this judicial district under 28 U.S.C. §§ 1391 and 1400 based at least on the fact that, according to its Complaint, Alnylam is a corporation organized and existing under the laws of the State of Delaware, and by virtue of the filing by Alnylam of this lawsuit in this venue.

**ANSWER:** The allegation of venue in paragraph 10 of the Counterclaims constitutes a legal conclusion that requires no response.  To the extent a response is required, Alnylam does not contest that, for the purposes of this action, and without waiving any defense of improper venue in connection with any other cause of action or claim, venue properly lies in this judicial district pursuant to § 1400. Except as expressly admitted herein, Alnylam denies each and every allegation of paragraph 10.

11.    There is an actual justiciable controversy among the parties concerning non-infringement and invalidity of the '979 Patent.

**ANSWER:** The allegation of an actual justiciable controversy among the parties in paragraph 11 of the Counterclaims constitutes a legal conclusion that requires no response.

6

## CASE AND CONTROVERSY

12.    The '979 Patent, entitled "Biodegradable Lipids for the Delivery of Active Agents," states an issue date of July 12, 2022, and names as inventors Martin Maier, Muthusamy Jayaraman, Akin Akinc, Shigeo Matsuda, Pachamuthu Kandasamy, Kallanthottathil G. Rajeev, and Muthiah Manoharan. Upon information and belief, a true and correct copy of the '979 Patent is attached to the Complaint as Exhibit 1 (D.I. 1-1).

**ANSWER:** Admitted.

13.    Upon information and belief, Alnylam is the assignee of all right, title, and interest in the '979 Patent.

**ANSWER:** Admitted.

14.    An actual, substantial, and justifiable controversy, within the meaning of 28 U.S.C. §§ 2201 and 2202, exists between Defendants and Alnylam.

**ANSWER:** The allegation of an actual, substantial, and justifiable controversy in paragraph 14 of the Counterclaims constitutes a legal conclusion that requires no response.

15.    This controversy is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

**ANSWER:**  The allegations in paragraph 15 constitute a legal conclusion that requires no response.

16.    Counterclaimants seek a declaration that the '979 Patent is not, and has not been, infringed, and the '979 Patent is invalid and unenforceable.

**ANSWER:** Alnylam denies that Counterclaimants are entitled to any relief. To the extent a response is required, Alnylam denies each and every allegation of paragraph 16.

## BACKGROUND

17.   In December of 2019, it was discovered that an outbreak of pneumonia among people who had visited the Huanan Seafood Wholesale Market in Wuhan, China was caused by a novel coronavirus, eventually designated by the World Health Organization as SARS-CoV-2 with the disease it causes reclassified as Coronavirus disease 2019 ("COVID-19").

**ANSWER:** Admitted.

18.   COVID-19 quickly spread around the world and tore through populations that were immunologically naïve, threatening the collapse of the healthcare system and loss of life at scales not seen since the advent of modern medicine. What began first as small area lockdowns to prevent the transmission of disease and temporary stay-at-home orders eventually became society-altering restrictions. Many saw the only path out of the pandemic as the development of successful vaccines against the disease.

**ANSWER:** At least because of the scope, breadth, and vagueness of this allegation, Alnylam lacks the knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 18 and therefore denies the allegations.

19.   BioNTech first began working on messenger RNA ("mRNA")-based clinical vaccine candidates in the early to mid-2010s, earning itself a reputation as an industry leader in mRNA technology. BioNTech partnered with several companies and research institutes to develop mRNA-based clinical vaccines.

**ANSWER:** At least because of the scope, breadth, and vagueness of this allegation, Alnylam lacks the knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 19 and therefore denies the allegations.

20.    BioNTech also licensed technology from multiple partners. In particular, BioNTech had licensed a synthetic lipid known as ALC-0315, otherwise known by its IUPAC name [4-hydroxybutyl)azanediyl]di(hexane-6,1-diyl) bis 2- hexyldecanoate) from Acuitas Therapeutics Inc. ("Acuitas"), formerly known as Alcana Technologies.

**ANSWER:** To the extent that paragraph 20 contains legal conclusions, it requires no response.  Alnylam denies that the IUPAC name of ALC-0315 is [(4-hydroxybutyl)azanediyl]***di***(hexane-6,1-diyl)  bis(2-hexyldecanoate); the IUPAC name of ALC-0315 is [(4-hydroxybutyl)azanediyl]***bis***(hexane-6,1-diyl) bis(2-hexyldecanoate) (emphasis added).  At least because of the scope, breadth, and vagueness of this allegation, Alnylam lacks the knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 20 and therefore denies the allegations.

21.   On January 10, 2020, the Chinese Center for Disease Control published the genetic sequence of SARS-CoV-2.

**ANSWER:** Alnylam admits that the Chinese Center for Disease Control published a draft genetic sequence of SARS-CoV-2 on January 10, 2020.  Except

as expressly admitted herein, Alnylam denies each and every allegation of paragraph 21.

22.   BioNTech scientists set to work on developing a COVID-19 disease vaccine.  BioNTech was able to do so by building on its existing development work and experience with mRNA-based clinical vaccine candidates. BioNTech had identified a product candidate—then known as BNT162—as a potential mRNA-based vaccine that would protect against COVID-19.

**ANSWER:** At least because of the scope, breadth, and vagueness of this allegation, Alnylam lacks the knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 22 and therefore denies the allegations.

23.   In March 2020, Pfizer and BioNTech began a collaborative effort focused on bringing a COVID-19 disease vaccine to market. The vaccine that ultimately emerged from this partnership was a novel mRNA vaccine now known as COMIRNATY®.

**ANSWER:** To the extent that paragraph 23 contains legal conclusions, it requires no response.  The Collaboration Agreement by and between Pfizer Inc. and BioNTech SE, dated March 17, 2020 (D.I. 1, Ex. 10) speaks for itself.  Except as expressly admitted herein, Alnylam denies each and every allegation of paragraph 23.

24.   Clinical trials of Pfizer/BioNTech vaccine candidates began in late April of 2020, with preliminary results demonstrating their safety and efficacy published in merely six months.

**ANSWER:** Alnylam admits that on April 22, 2020, Counterclaimants announced their first clinical trial in Germany of four mRNA vaccine candidates. D.I. 1, Ex. 11 at 1.  Alnylam admits that on November 18, 2020, Counterclaimants announced that their Phase 3 clinical trial met all primary efficacy endpoints. D.I. 1, Ex. 15 at 1.  Except as expressly admitted herein, Alnylam denies each and every allegation of paragraph 24.

25.   On November 20, 2020, Pfizer, on behalf of itself and BioNTech, submitted its clinical trial data as part of its Emergency Use Authorization ("EUA") request to the Food and Drug Administration ("FDA") for administering its mRNA vaccine to people 16 years of age and older.

**ANSWER:** At least because of the scope, breadth, and vagueness of this allegation, Alnylam lacks the knowledge or information sufficient to form a belief as to the truth of the allegation of paragraph 25 and therefore denies the allegations.

26.   On December 10, 2020, the FDA granted the first EUA for a COVID-19 disease vaccine to Pfizer and BioNTech's mRNA vaccine with vaccinations rolling out immediately thereafter, reflecting the fastest development of a vaccine in history.

**ANSWER:** Alnylam admits that on December 10, 2020, the FDA granted an EUA for Defendants' COVID-19 Vaccine.  At least because of the scope, breadth, and vagueness of this allegation, Alnylam lacks the knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 26 and therefore denies the allegations.

11

27.   The FDA provided Pfizer and BioNTech's vaccine with full approval on August 23, 2021, upon which it was given the trade name, COMIRNATY®.

**ANSWER:** Alnylam admits that Defendants market their COVID-19 vaccine under the trade name COMIRNATY®.  At least because of the scope, breadth, and vagueness of this allegation, Alnylam lacks the knowledge or information sufficient to form a belief as to the truth of the allegation that the "FDA provided Pfizer and BioNTech's vaccine with full approval" and therefore denies the allegations of paragraph 27.

28.   Since being given EUA, millions of doses of COMIRNATY® vaccine have been administered worldwide, resulting in countless number of lives saved while easing the strain of an otherwise uncontrollable pandemic.

**ANSWER:** Alnylam admits that "[s]ince being given EUA", at least "millions of doses of COMIRNATY® vaccine have been administered worldwide." At least because of the scope, breadth, and vagueness of this allegation, Alnylam lacks the knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 28 and therefore denies the allegations.

29.   On July 12, 2022, Alnylam sued Defendants for infringement of the '979 Patent, alleging that Defendants had incorporated the claimed subject matter of the '979 Patent into the COMIRNATY® vaccine in an infringing manner.

**ANSWER:** Admitted.

30.   On information and belief, Alnylam's efforts with Vir Biotechnology to develop a COVID-19 vaccine proved unsuccessful and were discontinued.

**ANSWER:** Alnylam admits that it worked with Vir Biotechnology to develop an antiviral therapy for the treatment of existing COVID-19 disease, as opposed to a vaccine for the prevention of SARS-CoV-2 infection and development of COVID-19 disease.  Alnylam admits that it is no longer pursuing development of that anti-viral therapy.  Except as expressly admitted herein, Alnylam denies each and every allegation of paragraph 30.

31.   Alnylam's alleged lipid technology is not a COVID vaccine.

**ANSWER:** Alnylam admits that its lipid technology—as claimed in the '979 Patent—is incorporated into Defendants' COVID-19 Vaccine.  *See also Alnylam Pharmaceuticals, Inc. v. Moderna, Inc., et al.*, C.A. No. 22-925-CFC (D. Del.), D.I. 1 at ¶¶ 33-53, Ex. 2.    Except as expressly admitted herein, Alnylam denies each and every allegation of paragraph 31.

32.   Alnylam's alleged lipid technology has never been included in a COVID vaccine.

**ANSWER:**   Alnylam incorporates by reference the allegations in its Complaint regarding Defendants' infringement of the '979 Patent, as well as the attached claim chart, which demonstrates that Alnylam's patented lipid technology is incorporated in Defendants' COVID vaccine.  *Alnylam Pharmaceuticals, Inc. v.*

13

*Pfizer Inc. et al*, No. 1:22-cv-00924-CFC (D. Del.), D.I. 1 at ¶¶ 26-55, Ex. 2; *see also Alnylam Pharmaceuticals, Inc. v. Moderna, Inc., et al.*, C.A. No. 22-925-CFC (D. Del.), D.I. 1 at ¶¶ 33-53, Ex. 2.  Except as expressly admitted herein, Alnylam denies each and every allegation of paragraph 32.

33.   In view of the foregoing, a conflict of asserted rights has arisen between Counterclaimants and Alnylam with respect to non-infringement, invalidity, and misuse of the relevant claims of the '979 Patent.

**ANSWER:** To the extent that the allegations in paragraph 33 of the Counterclaims constitutes a legal conclusion, it requires no response.  Except as expressly admitted herein, Alnylam denies each and every allegation of paragraph 33.

## PROSECUTION HISTORY OF U.S. PAT. NO. 11,246,979 FAMILY

34.   The '979 Patent claims priority back to four previous U.S. Patent Applications and two provisional patent applications.

**ANSWER:**  Following standard Patent Office procedure and as reflected on the first two pages of the '979 Patent, Alnylam claims priority to a chain of six patent applications—two provisional applications and four utility applications. Congress established the basis for claiming priority to provisional applications and utility applications in 35 U.S.C. § 119 and § 120, respectively.  The Patent Office sets forth how a patent applicant can make such priority claims in 37 C.F.R. § 1.78. For provisional applications, it sets forth the procedure an applicant must follow to

14

"claim the benefit of *one or more* prior-filed provisional applications."  37 C.F.R. § 1.78(a) (emphasis added).   For utility applications, it sets forth the procedure an applicant must follow to "claim the benefit of *one or more* prior-filed copending nonprovisional applications."  37 C.F.R. § 1.78(d) (emphasis added).  It has long been established that "there is no . . . limit to the number of prior applications through which a chain of copendency may be traced to obtain the benefit of the filing date of the earliest of a chain of copending applications, provided applicant meets all the other conditions of the statute.  *See Application of Henriksen*, 399 F.2d 253, 254 (C.C.P.A. 1968).  As stated in the USPTO's Manual of Patent Examining Procedure: "At any time before the patenting, abandonment, or termination of proceedings on an earlier application, an applicant may have recourse to filing a continuation application under 37 CFR 1.53(b) in order to introduce into the application a new set of claims and to establish a right to further examination by the Office."  MPEP § 201.07.

     35.   Alnylam filed its first provisional patent application in this family, U.S. Provisional Patent Application No. 61/568,133 (the "'133 Application"), on December 7, 2011.

          **ANSWER:** The USPTO's website states:

          A provisional application for patent (provisional application) is a U.S. national application filed in the USPTO under 35 U.S.C. §111(b). A provisional application is not required to have a formal patent claim or an oath or declaration. Provisional applications also should not include

any information disclosure (prior art) statement since provisional applications are not examined. A provisional application provides the means to establish an early effective filing date in a later filed nonprovisional patent application filed under 35 U.S.C. §111(a).

*See* https://www.uspto.gov/patents/basics/types-patent-applications/provisional-application-patent.

Following this procedure, Alnylam admits that it filed its 142-page U.S. Provisional Patent Application No. 61/568,133 (the "'133 Provisional Application"), on December 7, 2011. This comprises 122 pages of the specification describing the inventions and 19 pages of provisional claims, as the document reflects on its face.

36.   The claims of the '133 Application cover both specific compounds and compounds defined by formulas, all of which are compounds with nitrogen containing head and carbon based central moieties, represented by (*) in the formula below.

**ANSWER:** To the extent that paragraph 36 contains legal conclusions, it requires no response. The '133 Provisional Application speaks for itself and contains disclosure, *e.g.*, that states: "[a]dditional embodiments include a cationic lipid having ***a head group***, one or more hydrophobic tails, and a linker between the head group and the one or more tails." (emphasis added). Except as expressly admitted herein, Alnylam denies each and every allegation of paragraph 36.

16

37.   The compound defined by Formula (I) recited by claim 1 is representative:



Formula (I)

**ANSWER:** Alnylam admits that Figure (I) is printed in the "'133 Provisional Application" and is recited in provisional claim 1.  Except as expressly admitted herein, Alnylam denies each and every allegation of paragraph 37.

38.   The '133 Application expired on December 9, 2012.

**ANSWER:** To the extent that paragraph 38 contains legal conclusions, it requires no response.  Alnylam admits it filed the '133 Provisional Application on December 7, 2011.  Except as expressly admitted herein, Alnylam denies each and every allegation of paragraph 38.

39.   Alnylam filed a second provisional patent application in this family, U.S. Provisional Patent Application No. 61/623,274 (the "'274 Application"), on April 12, 2012.

**ANSWER:** Following standard USPTO procedures, Alnylam admits it filed a second 187-page U.S. Provisional Patent Application No. 61/623,274 (the "'274 Provisional Application") on April 12, 2012, containing subject matter from the First Provisional and adding subject matter to the '274 Provisional Application.

17

The '274 Provisional Application comprises 150 pages of the specification describing the inventions and 36 pages of provisional claims.  Except as expressly admitted herein, Alnylam denies each and every allegation of paragraph 39.

40.   The claims of the '274 Application cover both specific compounds and compounds defined by formulas, all of which are compounds with nitrogen containing head and carbon-based central moieties. The carbon-based central moiety is represented by (*) in the formula below.

**ANSWER:** To the extent that paragraph 40 contains legal conclusions, it requires no response.   The '274 Provisional Application speaks for itself and contains disclosure, *e.g.*, that states: "[a]dditional embodiments include a cationic lipid having *a head group*, one or more hydrophobic tails, and *a central moiety* between the head group and the one or more tails." (emphasis added).   Further, the '274 Provisional Application states, *e.g.*, "[r]epresentative central moieties include, but are not limited to, a central carbon atom, *a central nitrogen atom*, a central carbocyclic group, a central aryl group, a central hetrocyclic [heterocyclic] group (e.g., central tetrahydrofuranyl group or central pyrrolidinyl group) and a central heteroaryl group." (emphasis added).   Except as expressly admitted herein, Alnylam denies each and every allegation of paragraph 40.

41.   The compound defined by Formula (I) recited by claim 1 is representative:



Formula (I)

**ANSWER:**   Alnylam admits that Formula (I) is printed in the '274 Provisional Application and is recited in provisional claim 1.  Except as expressly admitted herein, Alnylam denies each and every allegation of paragraph 41.

42.   The '274 Application expired on April 14, 2013.

**ANSWER:** To the extent that paragraph 42 contains legal conclusions, it requires no response.  Except as expressly admitted herein, Alnylam denies each and every allegation of paragraph 42.

43.   Alnylam filed its first non-provisional patent application in this family, U.S. Patent Application No. 13/708,383 (the "'383 Application"), on December 7, 2012.

**ANSWER:**   Alnylam admits that following standard Patent Office procedures it filed on December 7, 2012, a 237-page U.S. Patent Application No. 13/708,383 (the "'383 Application") incorporating subject matter from the two earlier provisional applications.  The '383 Application comprises 210 pages of the

specification describing the inventions and 26 pages of claims.  Except as expressly admitted herein, Alnylam denies each and every allegation of paragraph 43.

44.   The claims of the '383 Application cover both specific compounds and compounds defined by formulas, all of which are compounds with nitrogen containing head groups and carbon-based central moieties. The carbon-based central moiety is represented by (*) in the formula below.

**ANSWER:** To the extent that paragraph 44 contains legal conclusions, it requires no response.   The '383 Application speaks for itself and contains disclosure, *e.g.*, that states: "In one embodiment, the primary group includes (i) ***a head group***, and (ii) a central moiety (e.g., a central carbon atom) to which both the hydrophobic tails are directly bonded.  Representative central moieties include, but are not limited to, a central carbon atom, ***a central nitrogen atom***, a central carbocyclic group, a central aryl group, a central hetrocyclic [heterocyclic] group (e.g., central tetrahydrofuranyl group or central pyrrolidinyl group) and a central heteroaryl group." (emphasis added).    Except as expressly admitted herein, Alnylam denies each and every allegation of paragraph 44.

45.   The compound defined by Formula (I) recited by claim 1 is representative:

Formula (I)

**ANSWER:** Alnylam admits that Formula (I) is printed in the '383 Patent Application and is recited in the Application's claim 1.   Except as expressly admitted herein, Alnylam denies each and every allegation of paragraph 45.

46.   The '383 Application issued as U.S. Pat. No. 9,061,063 (the "'063 Patent"), on June 23, 2015.

**ANSWER:**  The USPTO's Rules for patent examination set forth in 37 CFR § 1.104(a) entitled "Nature of Examination" requires the Patent Examiner "On taking up an application for examination . . ., the examiner shall make a thorough study thereof and shall make a thorough investigation of the available prior art relating to the subject matter of the claimed invention. The examination shall be complete with respect both to compliance of the application . . . with the applicable statutes and rules and to the patentability of the invention as claimed, as well as with respect to matters of form, unless otherwise indicated."   Following the examination process, the '383 Application was allowed on January 2, 2015, Alnylam paid the issue fee on April 2, 2015, and the '383 Application issued as the

'063 Patent on June 23, 2015.  Except as expressly admitted herein, Alnylam denies each and every allegation of paragraph 46.

47.   The claims of the '063 Patent cover both specific compounds and compounds defined by formulas, all of which are compounds with nitrogen containing head groups and carbon based central moieties. The carbon based central moiety is, represented by (*) in the formula below.

**ANSWER:** To the extent that paragraph 47 contains legal conclusions, it requires no response.  The '063 Patent speaks for itself and contains disclosure, *e.g.*, that states: "[a]dditional embodiments include a cationic lipid having ***a head group***, one or more hydrophobic tails, and ***a central moiety*** between the head group and the one or more tails." (emphasis added).   Further, the '274 Provisional Application states, *e.g.*, "[r]epresentative central moieties include, but are not limited to, a central carbon atom, ***a central nitrogen atom***, a central carbocyclic group, a central aryl group, a central hetrocyclic [heterocyclic] group (e.g., central tetrahydrofuranyl group or central pyrrolidinyl group) and a central heteroaryl group." (emphasis added).  Except as expressly admitted herein, Alnylam denies each and every allegation of paragraph 47.

48.   The compound defined by Formula (III) recited by claim 1 is representative:

Formula (III)

**ANSWER:** Alnylam admits that Formula (III) is printed in the '063 Patent and is recited in the '063 Patent's claim 1.  Except as expressly admitted herein, Alnylam denies each and every allegation of paragraph 48.

49.   Alnylam filed its second non-provisional patent application in this family, U.S. Patent Application No. 14/677,801 (the "'801 Application"), on April 2, 2015.

**ANSWER:**  Alnylam admits that following standard USPTO procedure for continuation applications (*see* ¶ 38, *supra*), on April 2, 2015—the same day it paid the issue fee in the '383 Application—it filed continuation U.S. Patent Application No. 14/677,801 (the "'801 Continuation Application") to ensure copendency as required by 35 U.S.C. § 120.  The '801 Continuation Application contains the specification of the earlier filed '383 Application and claimed priority to the earlier '133 and '274 Provisional Applications and the '383 Application.   Except as expressly admitted herein, Alnylam denies each and every allegation of paragraph 49.

50.   The claims of the '801 Application cover both specific compounds and compounds defined by formulas, all of which are compounds with nitrogen containing head groups and carbon based central moieties. The carbon based central moiety is represented by (*) in the formula below.

**ANSWER:** To the extent that paragraph 50 contains legal conclusions, it requires no response.  The '801 Continuation Application speaks for itself and contains disclosure, *e.g.*, that states: "[a]dditional embodiments include a cationic lipid having *a head group*, one or more hydrophobic tails, and *a central moiety* between the head group and the one or more tails." (emphasis added).   Further, the '274 Provisional Application states, *e.g.*, "[r]epresentative central moieties include, but are not limited to, a central carbon atom, *a central nitrogen atom*, a central carbocyclic group, a central aryl group, a central hetrocyclic [heterocyclic] group (e.g., central tetrahydrofuranyl group or central pyrrolidinyl group) and a central heteroaryl group." (emphasis added).   Except as expressly admitted herein, Alnylam denies each and every allegation of paragraph 50.

51.   The compound defined by Formula (III) recited by claim 1 is representative:



Formula (III)

24

**ANSWER:**   Alnylam admits that Formula (III) is printed in the '801 Continuation Application and is recited in the Application's claim 1.  Except as expressly admitted herein, Alnylam denies each and every allegation of paragraph 51.

52.   The '801 Application issued as U.S. Pat. No. 10,369,226 (the "'226 Patent"), on August 6, 2019.

**ANSWER:** 37 C.F.R. § 1.104(a) "Nature of Examination" requires the Patent Examiner "On taking up an application for examination . . ., the examiner shall make a thorough study thereof and shall make a thorough investigation of the available prior art relating to the subject matter of the claimed invention. The examination shall be complete with respect both to compliance of the application . . . with the applicable statutes and rules and to the patentability  of the invention as claimed, as well as with respect to matters of form, unless otherwise indicated to review the complete specification, including the detailed description of the invention, any specific embodiments that have been disclosed, the claims and any specific, substantial, and credible utilities that have been asserted for the invention. After obtaining an understanding of what applicant invented, the examiner will conduct a search of the prior art and determine whether the invention as claimed complies with all statutory requirements."   Following the examination process, the '801 Application was allowed on February 14, 2019, Alnylam paid the issue fee on

May 14, 2019, and Alnylam received an Issue Notification on July 17, 2019,

indicating that the '226 Patent would issue on August 6, 2019, and the '226 Patent

subsequently did so.  Except as expressly admitted herein, Alnylam denies each and

every allegation of paragraph 52.

53.   The claims of the '226 Patent cover both specific compounds and
compounds defined by formulas, all of which are compounds with nitrogen
containing head groups and carbon based central moieties. The carbon based
central moiety is represented by (*) in the formula below.

**ANSWER:** To the extent that paragraph 53 contains legal conclusions, it

requires no response.  The '226 Patent speaks for itself and contains disclosure,

*e.g.*, that states: "[a]dditional embodiments include a cationic lipid having ***a head***

***group***, one or more hydrophobic tails, and ***a central moiety*** between the head group

and the one or more tails." (emphasis added).    Further, the '274 Provisional

Application states, *e.g.*, "[r]epresentative central moieties include, but are not

limited to, a central carbon atom, ***a central nitrogen atom***, a central carbocyclic

group, a central aryl group, a central hetrocyclic [heterocyclic] group (e.g., central

tetrahydrofuranyl group or central pyrrolidinyl group) and a central heteroaryl

group." (emphasis added).  Except as expressly admitted herein, Alnylam denies

each and every allegation of paragraph 53.

54.   The compound defined by Formula (III) recited by claim 1 is
representative:

26

Formula (III)



**ANSWER:** Alnylam admits that Formula (III) is printed in the '226 Patent and is recited in the Patent's claim 1. Except as expressly admitted herein, Alnylam denies each and every allegation of paragraph 54.

55.   Alnylam filed a third non-provisional patent application in this family, U.S. Patent Application No. 16/520,183 (the "'183 Application"), on July 23, 2019.

**ANSWER:** Alnylam admits that following standard USPTO procedure for continuation applications (*see* ¶ 38, *supra*), on July 23, 2019—before the '226 Patent issued—it filed continuation U.S. Patent Application No. 16/520,183 (the "'183 Continuation Application") to ensure copendency as required by 35 U.S.C. § 120. The '183 Continuation Application contains the specification of the '383 and '801 Applications and claimed priority to the earlier '133 and '274 Provisional Applications and the '383 and '801 Applications. Except as expressly admitted herein, Alnylam denies each and every allegation of paragraph 55.

56.   The claims of the '183 Application cover processes for creating individual compounds defined by formulas, all of which are compounds with nitrogen containing head groups and carbon based central moieties.

27

**ANSWER:** To the extent that paragraph 56 contains legal conclusions, it requires no response.   Except as expressly admitted herein, Alnylam denies each and every allegation of paragraph 56.

57.   The compound generated by the process of claim 39 is representative:



**ANSWER:** Alnylam admits that the compound is printed in the '183 Continuation Application and is recited in claim 39.  Except as expressly admitted herein, Alnylam denies each and every allegation of paragraph 57.

58.   The '183 Application issued as U.S. Pat. No. 11,071,784 (the "'784 Patent"), on July 27, 2021.

**ANSWER:** 37 C.F.R. § 1.104(a) "Nature of Examination" requires the Patent Examiner "On taking up an application for examination . . ., the examiner shall make a thorough study thereof and shall make a thorough investigation of the available prior art relating to the subject matter of the claimed invention. The examination shall be complete with respect both to compliance of the application . . . with the applicable statutes and rules and to the patentability  of the invention as

claimed, as well as with respect to matters of form, unless otherwise indicated to review the complete specification, including the detailed description of the invention, any specific embodiments that have been disclosed, the claims and any specific, substantial, and credible utilities that have been asserted for the invention. After obtaining an understanding of what applicant invented, the examiner will conduct a search of the prior art and determine whether the invention as claimed complies with all statutory requirements."  Following the examination process, the '183 Continuation Application was allowed on March 22, 2021, Alnylam paid the issue fee on June 22, 2021, and the '183 Application issued as the '784 Patent on July 27, 2021.  Except as expressly admitted herein, Alnylam denies each and every allegation of paragraph 58.

  59.   The claims of the '784 Patent recite only a single non-biodegradable compound, as shown below:



  **ANSWER:** Alnylam admits this compound is printed in the '784 Patent and is recited in the single claim of the '784 Patent.   Except as expressly admitted herein, Alnylam denies each and every allegation of paragraph 59.

  60.   The compound claimed by the '784 Patent is a precursor molecule that is used in the synthesis of the compound described in claim 39 of the '183

29

Application.

**ANSWER:** At least because of the scope, breadth, and vagueness of this allegation, Alnylam lacks the knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 60 and therefore denies the allegations.

61.   On April 9, 2021, the structure of each of the lipid components of the LNP included in the COMIRNATY® vaccine, including ALC-0315, was published in Schoenmaker *et al*., "mRNA-Lipid Nanoparticle COVID-19 Vaccines: Structure and Stability" 601 INTERNATIONAL J. OF PHARMACEUTICS 1-13, at 8 (2021).

**ANSWER:** Alnylam admits that Schoenmaker *et al*., "mRNA- Lipid Nanoparticle COVID-19 Vaccines: Structure and Stability" 601 INTERNATIONAL J. OF PHARMACEUTICS 1-13, at 8 (2021) is attached to the Complaint as Exhibit 21.  The document speaks for itself.  Except as expressly admitted herein, Alnylam denies each and every allegation of paragraph 61.

62.   Immediately after disclosure of the structure of the lipids used in the COMIRNATY® vaccine, Alnylam flied a fourth non-provisional patent application in this family, U.S. Patten Application No. 17/302,311 (the "'311 Application"), on April 29, 2021.

**ANSWER:** Alnylam admits that following standard USPTO procedure for continuation applications (*see* ¶ 38, *supra*), on April 29, 2021—shortly after allowance of the '183 Continuation Application— it filed continuation U.S. Patent Application No. 17/302,311 (the "'311 Continuation Application") to ensure

copendency as required by 35 U.S.C. § 120.  The '311 Continuation Application

contains the specification of the earlier-filed '383, '801, and '183 Applications, and

claimed priority to the earlier '133 and '274 Provisional Applications and the '383,

'801, and '183 Applications.  Except as expressly admitted herein, Alnylam denies

each and every allegation of paragraph 62.

63.   The '311 Application is the first application in this family which, on
its face, purports to claim a compound that does not have a nitrogen containing
head group or a carbon based central moiety.

**ANSWER:** To the extent that paragraph 63 contains legal conclusions, it

requires no response.    Except as expressly admitted herein, Alnylam denies each

and every allegation of paragraph 63.

64.   For instance, claims 1 and 3 as originally filed read:

> 1. A cationic lipid comprising a primary group and two biodegradable hydrophobic tails, wherein (a) the primary group comprises a protonatable group having a $pK_a$ of from about 4 to about 13, (b) the cationic lipid has an *in vivo* half life ($t1/2$) of less than about 3 hours, and (c) at least one of the hydrophobic tails has the formula –(hydrophobic   chain)-   (biodegradable group)-(hydrophobic chain) where the terminal   hydrophobic   chain   in   the hydrophobic tail is a branched alkyl group, where   the   branching   occurs   at   the *a*-position   relative   to   the   biodegradable group.

31

> 2. The cationic lipid of claim 1, wherein the primary group includes (i) a head group, and (ii) a central moiety to which both the biodegradable hydrophobic tails are directly bonded.
>
> 3. The cationic lipid of claim 2, wherein the central moiety is selected from the group consisting of a central carbon atom, a central nitrogen atom, a central carbocyclic group, a central aryl group, a central heterocyclic and a central heteroaryl group.

**ANSWER:** Alnylam admits that these words are printed in the '311 Continuation Application and are recited in the Patent's claims 1-3. Alnylam admits that "on its face" (see para 63 allegation) the '311 Continuation Application's pending claims encompass certain lipid compounds comprising a non-nitrogen containing head group or a non-carbon containing central moiety. Except as expressly admitted herein, Alnylam denies each and every allegation of paragraph 64.

65.   The '311 Application was filed after the structure of the cationic lipid incorporated into COMIRNATY® vaccine was published.

**ANSWER:** Alnylam admits that the '311 Continuation Application was filed on April 29, 2021. Alnylam admits that Schoenmaker *et al*., "mRNA- Lipid Nanoparticle COVID-19 Vaccines: Structure and Stability" 601 INTERNATIONAL J. OF PHARMACEUTICS 1-13, at 8 (2021) is attached to the

Complaint as Exhibit 21.  The document speaks for itself.   Except as so admitted,

Alnylam denies each and every allegation of paragraph 65.

66.   The '311 Application issued as U.S. Pat. No. 11,246, 933 (the "'933 Patent") on February 15, 2022.

**ANSWER:** Alnylam admits that the '311 Application issued as the '933

Patent on February 15, 2022.  Except as expressly admitted herein, Alnylam denies

each and every allegation of paragraph 66.

67.   Alnylam filed a fifth non-provisional patent application in this family, U.S. Patent Application No. 17/644,907 (the "'907 Application"), on December 17, 2021, which issued as U.S. Pat. No. 11,382,979 (the "'979 Patent") on July 12, 2022.

**ANSWER:** Alnylam admits that following standard USPTO procedure for

continuation applications (*see* ¶ 38, *supra*), on December 17, 2021—before the

'311 Application issued—it filed continuation No. 17/644,907 (the "'907

Application) to ensure copendency as required by 35 U.S.C. § 120.  The '907

Continuation Application contains the specification of the '383 and '801

Applications and claimed priority to the earlier '133 and '274 Provisional

Applications and the '383 and '801 Applications.  Except as expressly admitted

herein, Alnylam denies each and every allegation of paragraph 67.

68.   The '907 Application is the second application in this family which, on its face, purports to claim a compound that does not have a nitrogen containing head group or a carbon based central moiety.

**ANSWER:** To the extent that paragraph 68 contains legal conclusions, it requires no response.  Except as expressly admitted herein, Alnylam denies each and every allegation of paragraph 68.

69.   For instance, claim 1 as originally filed recites:

1. A lipid particle comprising:

(i) a nucleic acid,
(ii) 35-65 mol % of a cationic lipid,
(iii) 3-12 mol %
distearoylphosphatidylcholine (DSPC),
(iv) 15-45 mol % cholesterol, and
(v) 0.5-10 mol % of a PEG-modified lipid,

wherein the mol % is based on 100% total
moles of lipids in the lipid particle; and

the cationic lipid comprises a head group,
two hydrophobic tails, and a central moiety
to which the head group and the two
hydrophobic tails are directly bonded,
wherein

(a) the central moiety is a central carbon or
nitrogen atom;

(b) each hydrophobic tail independently
has the formula -(hydrophobic chain)- (ester
group)-(hydrophobic chain), wherein the
ester group is -OC(O)- or - C(O)O-; and

(c) for at least one hydrophobic tail,

(I) the terminal hydrophobic chain in

34

the hydrophobic tail is a branched alkyl, where the branching occurs at the $\alpha$-position relative to the ester group;

(II) the hydrophobic tail has the formula -$R^{12}$-$M^1$-$R^{13}$, wherein $R^{12}$ is a $C^4$-$C^{14}$ alkylene or $C^4$-$C^{14}$ alkenylene, $M^1$ is the ester group, and $R^{13}$ is a branched $C^{10}$-$C^{20}$ alkyl;

(III) the total carbon atom content of the tail -$R^{12}$-$M^1$-$R^{13}$ is 21 to 26; and

(IV) the ester group is separated from a terminus of the hydrophobic tail by from 6 to 12 carbon atoms.

**ANSWER:** Alnylam admits that these words are printed in the '907 Application and are recited in the Patent's claim 1. Alnylam admits that "on its face" (see para 68 allegation) the '907 Continuation Application's pending claims encompass certain lipid compounds comprising a non-nitrogen containing head group or a non-carbon containing central moiety. Except as expressly admitted herein, Alnylam denies each and every allegation of paragraph 69.

70. The '907 Application was filed after the structure of the lipids incorporated into the COMIRNATY® vaccine was published and after the full approval of the COMIRNATY® vaccine in August 2021.

**ANSWER:** Alnylam admits that the '907 Application was filed on July 12, 2022. Alnylam admits that Schoenmaker *et al.*, "mRNA- Lipid Nanoparticle COVID-19 Vaccines: Structure and Stability" 601 INTERNATIONAL J. OF PHARMACEUTICS 1-13, at 8 (2021) is attached to the Complaint as Exhibit 21.

The document speaks for itself.   Except as so admitted, Alnylam denies each and every allegation of paragraph 70.

## COUNT I – DECLARATION OF NON-INFRINGEMENT

71.   Counterclaimants incorporate by reference paragraphs 1 through 70 of its Counterclaims as if fully set forth herein.

**ANSWER:** Alnylam restates and incorporates by reference each and every response set forth above in paragraphs 1-70 of its Answer to the Counterclaims as if fully set forth herein.  Alnylam denies Counterclaimants' preliminary statement.

72.   This Counterclaim arises under the Patent Laws of the United States, 35 U.S.C. §1 et seq., and the Declaratory Judgment Act, 28 U.S.C. 28 §§ 2201 and 2202. An actual, substantial, and continuing justiciable controversy having adverse legal interest of sufficient immediacy and reality to warrant the issuance of a declaration of rights by the Court exists between Counterclaimants and Alnylam concerning infringement of the '979 Patent.

**ANSWER:** The allegations in paragraph 72 of the Counterclaims constitute a legal conclusion that requires no response.

73.   Alnylam has accused Counterclaimants of activities that it claims infringe the '979 Patent.

**ANSWER:** Alnylam admits that it alleges that Defendants' COVID-19 Vaccine infringes certain claims of the '979 Patent.  Except as expressly admitted herein, Alnylam denies each and every allegation of paragraph 73.

74.   Counterclaimants do not and have not infringed, either directly or indirectly, any claim of the '979 Patent.

**ANSWER:** The allegations of Counterclaim paragraph 73 constitute a legal conclusion that requires no response.  Alnylam denies each and every allegation of paragraph 74.

75.   Counterclaimants are entitled to a declaratory judgment from this Court that they do not and have not infringed any claim of the '979 Patent.

**ANSWER:** The allegations of Counterclaim paragraph 75 constitute a legal conclusion that requires no response.  Alnylam denies each and every allegation of paragraph 75.

76.   This is an exceptional case under 35 U.S.C. § 285, entitling counterclaimants to an award of attorneys' fees incurred in connection with this matter.

**ANSWER:** The allegations of Counterclaim paragraph 76 constitute a legal conclusion that requires no response.  Alnylam denies each and every allegation of paragraph 76.

## <u>COUNT II – DECLARATION OF INVALIDITY</u>

77.   Counterclaimants incorporate by reference Paragraphs 1 through 76 of its Counterclaims as if fully set forth herein.

**ANSWER:** Alnylam restates and incorporates by reference each and every response set forth above in paragraphs 1-76 of its Answer to the Counterclaims as if fully set forth herein.  Alnylam denies Counterclaimants' preliminary statement.

37

78.   At least claims 1-4, 7, 9-20, 23, and 25-30 of the '979 Patent are invalid for failure to satisfy one or more of the provisions set forth in 35 U.S.C. §§ 100 *et seq*., including, without limitation, the requirements of 35 U.S.C. §§ 101, 102, 103 and/or 112 and/or any other judicially created requirements for patentability and enforceability of patent and/or in view of the defenses recognized in 35 U.S.C. § 282.

**ANSWER:** The allegations in paragraph 78 of the Counterclaims constitute a legal conclusion that requires no response.  Further, the Supreme Court has held: "In asserting an invalidity defense, an alleged infringer must contend with the first paragraph of 35 U.S.C. § 282, which provides that '[a] patent shall be presumed valid' and '[t]he burden of establishing invalidity ... rest[s] on the party asserting such invalidity.'" *Microsoft Corp. v. I4I Ltd. P'ship*, 564 U.S. 91, 97 (2011).  As a consequence, a party challenging the validity of an issued patent must establish clearly and convincingly, a not by a preponderance, that the patent is invalid.  *See id.* at 102-03 (affirming Congress intended the higher burden for invalidity to be clear and convincing evidence).  Alnylam denies each and every allegation of paragraph 78.

79.   Counterclaimants are entitled to a declaratory judgment from this Court that the '979 Patent is invalid.

**ANSWER:** The allegation of paragraph 79 of the Counterclaims constitutes a legal conclusion that requires no response.  Alnylam denies each and every allegation of paragraph 79.

38

## COUNT III – DECLARATION OF PATENT MISUSE

80.   Defendants incorporate by reference Paragraphs 1 through 79 of their Counterclaims as if fully set forth herein.

**ANSWER:** Alnylam restates and incorporates by reference each and every response set forth above in paragraphs 1-79 of its Answer to the Counterclaims as if fully set forth herein.  Alnylam denies Counterclaimants' preliminary statement.

81.   Alnylam has sought to enforce and/or license the patents-in-suit for products and acts they know are outside the claims of the patents-in-suit.

**ANSWER:** To the extent that the allegation of paragraph 81 of the Counterclaims constitutes a legal conclusion, it requires no response.  35 U.S.C. § 271(d) states that "*No patent owner* otherwise entitled to relief for infringement or contributory infringement of a patent *shall be denied relief or deemed guilty of misuse or illegal extension of the patent right* by reason of his having done one or more of the following: . . . (3) *sought to enforce his patent rights against infringement or contributory infringement . . . .*" (emphases added.)  Alnylam admits that it brought the above captioned action to enforce its patent rights against infringement.  These patent rights issued following examination by the Patent Office. 37 C.F.R. § 1.104(a) "Nature of Examination" requires the Patent Examiner "On taking up an application for examination . . ., the examiner shall make a thorough study thereof and shall make a thorough investigation of the available

prior art relating to the subject matter of the claimed invention. The examination shall be complete with respect both to compliance of the application . . . with the applicable statutes and rules and to the patentability of the invention as claimed, as well as with respect to matters of form, unless otherwise indicated." Following the examination process, the '907 Continuation Application with its approved claims issued as the '979 Patent on July 12, 2022.

An issued patent is presumed valid under Supreme Court authority. *Microsoft Corp. v. I4I Ltd. P'ship*, 564 U.S. 91, 97 (2011). Also, "[t]here is a heavy presumption that claim terms are to be given their ordinary and customary meaning." *Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1358 (Fed. Cir. 2017) (quoting *Aventis Pharm. Inc. v. Amino Chems. Ltd.*, 715 F.3d 1363, 1373 (Fed. Cir. 2013)). Counterclaimants fail to allege that the ordinary and customary meaning of the '979 Patent's Asserted Claims do not encompass lipid structures that comprise a non-nitrogen containing head group and a nitrogen-containing central moiety, such as the accused ALC-0315. *See* Alnylam's Preliminary Claim Chart attached as Exhibit 2 to the Complaint. Issued asserted claim 18 is illustrative:

> A cationic lipid comprising a primary group and two biodegradable hydrophobic tails, wherein
> the primary group comprises (i) a head group that optionally comprises a primary, secondary, or tertiary amine, and (ii) a central moiety to which the head group and the two biodegradable

40

hydrophobic tails are directly bonded;

the central moiety is a central carbon or nitrogen atom;

each biodegradable hydrophobic tail independently has the formula -(hydrophobic chain)(biodegradable group )-(hydrophobic chain), wherein the biodegradable group is -OC(O)- or -C(O)O-;

for at least one biodegradable hydrophobic tail, the terminal hydrophobic chain in the biodegradable hydrophobic tail is a branched alkyl, where the branching occurs at the α-position relative to the biodegradable group and the biodegradable hydrophobic tail has the formula -$R^{12}$-$M^1$-$R^{13}$, where $R^{12}$ is a $C_4$-$C_{14}$ alkylene or $C_4$-$C_{14}$ alkenylene, $M^1$ is the biodegradable group, $R^{13}$ is a branched $C_{10}$-$C_{20}$ alkyl, and the total carbon atom content of the tail -$R^{12}$-$M^1$-$R^{13}$ is 21 to 26;

in at least one hydrophobic tail, the biodegradable group is separated from a terminus of the hydrophobic tail by from 6 to 12 carbon atoms; and

the lipid has a pKa in the range of about 4 to about 11 and a logP of at least 10.1.

As alleged above when addressing the '907 Continuation Application's pending claims of similar wording and scope, Counterclaimants admit that the claims "on their face" in fact do encompass lipid compounds that do not have a nitrogen containing head group or a carbon based central moiety. *See* paragraphs 68-69, *supra*. ALC-0315 is a lipid compound that does not have a nitrogen containing head group or a carbon based central moiety. Except as expressly admitted herein, Alnylam denies each and every allegation of paragraph 81, including that Alnylam purportedly knows that ALC-0315 is outside the scope of the issued '979 Patent's asserted claims that presumptively and "on their face" encompass ALC-0315.

41

82.   All family members of the '979 Patent family prior to the filing of the application that resulted in the '979 Patent have claims directed to compounds with a nitrogen containing head group.

**ANSWER:** To the extent that the allegation of paragraph 82 of the Counterclaims constitutes a legal conclusion, it requires no response.  Except as expressly admitted herein, Alnylam denies each and every allegation of paragraph 82.

83.   All structures in the '979 Patent disclose lipids that have nitrogen in their head groups, unlike ALC-0315.

**ANSWER:** Alnylam denies each and every allegation of paragraph 83.

84.   Alnylam only began prosecuting the claims of the '979 Patent, directed to a class of compounds and silent on their face as to the presence of nitrogen in the head group, after the lipid components of the COMIRNATY® vaccine were published and years after the alleged priority date of the '979 Patent.

**ANSWER:** Alnylam admits that following standard USPTO procedure for continuation applications (*see* ¶ 38, *supra*), on December 17, 2021—shortly after allowance of the '311 Continuation Application— it filed the '907 Continuation Application to ensure copendency as required by 35 U.S.C. § 120.  Alnylam admits that the continuation '907 Application claims priority to a series of earlier applications.  Except as expressly admitted herein, Alnylam denies each and every allegation of paragraph 84.

85.   There is no support for the claims of the '979 Patent in its specification.

**ANSWER:**  To the extent that the allegation of paragraph 85 constitutes a legal conclusion, it requires no response.   The specification discloses non-nitrogen containing head groups.   For example, the specification states that a nitrogen containing head group is only a preferred embodiment, and therefore not required for the invention.   '979 Patent at 23:49-50 ("a head group (preferably a nitrogen containing head group, such as the head groups described herein)").   Further, the specification discloses that "[o]ther head groups are suitable as well."   *See* '979 Patent at 33:11-12.   For example, the '979 Patent discloses a non-nitrogen containing primary group[3]:



'979 Patent at 27:40-45.

Except as expressly admitted herein, Alnylam denies each and every allegation of paragraph 85.

---

[3] The '979 Patent defines a "primary group" as the head group and the central moiety.

43

86.   Alnylam's conduct in seeking to license and enforce the '979 Patent against products and acts it knows to be outside the scope of the claims of the patent-in-suit, and outside the scope of what Alnylam actually invented, is an attempt to seek an improper economic benefit.

**ANSWER:** To the extent that the allegations of Counterclaim paragraph 86 constitute a legal conclusion, it requires no response.  Except as expressly admitted herein, Alnylam denies each and every allegation of paragraph 86.

87.   Alnylam has engaged in a course of conduct that seeks to broaden the scope of the '979 Patent with anticompetitive effect.

**ANSWER:** To the extent that the allegation of paragraph 87 of the Counterclaims constitutes a legal conclusion, it requires no response.  Alnylam denies each and every allegation of paragraph 87.

88.   Alnylam's misuse of the patent-in-suit renders the '979 Patent unenforceable.

**ANSWER:** The allegation of Counterclaim paragraph 88 constitutes a legal conclusion that requires no response.  35 U.S.C. § 271(d) states that "***No patent owner*** otherwise entitled to relief for infringement or contributory infringement of a patent ***shall be denied relief or deemed guilty of misuse or illegal extension of the patent right*** by reason of his having done one or more of the following: . . . (3) ***sought to enforce his patent rights against infringement or contributory infringement*** . . . ."  (emphases added.)  Alnylam admits that it brought the above

captioned action to enforce its patent rights against infringement.  Except as so admitted herein, Alnylam denies each and every allegation of paragraph 88.

## **RELIEF REQUESTED**

Alnylam denies that Counterclaimants are entitled to any relief from Alnylam, including the relief Counterclaimants seek in their Relief Requested, including subparts (a) through (h).  Counterclaimants' Relief Requested should be denied in its entirety and with prejudice, and Counterclaimants should be awarded nothing.  Alnylam further denies each and every allegation in Counterclaimants' Relief Requested.

OF COUNSEL:

William G. Gaede, III
McDermott Will & Emery LLP
415 Mission Street, Suite 5600
San Francisco, CA 94105
(650) 815-7400

Sarah Chapin Columbia
Sarah J. Fischer
McDermott Will & Emery LLP
200 Clarendon Street, Floor 58
Boston, MA 02116-5021
(617) 535-4000

Ian B. Brooks
McDermott Will & Emery LLP
500 N. Capitol Street NW
Washington, DC 20003
(202) 756-8000

Bhanu K. Sadasivan, Ph.D.
McDermott Will & Emery LLP
650 Live Oak Avenue, Suite 300
Menlo Park, CA 94025-4885
(650) 815-7537

Dated: September 29, 2022

MCDERMOTT WILL & EMERY LLP

/s/ *Ethan H. Townsend*
Ethan H. Townsend (#5813)
The Nemours Building
1007 North Orange Street, 10th Floor
Wilmington, DE 19801
(302) 485-3910
ehtownsend@mwe.com

*Attorneys for Alnylam Pharmaceuticals, Inc.*