# EXHIBIT 1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ALNYLAM PHARMACEUTICALS, INC., <br><br> Plaintiff, <br><br> v. <br><br> PFIZER INC., PHARMACIA & UPJOHN CO. LLC, BIONTECH SE, AND BIONTECH MANUFACTURING GMBH, <br><br> Defendants. | Civil Action No. 22-336-CFC (CONSOLIDATED) <br><br> DEMAND FOR JURY TRIAL |

## FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Alnylam Pharmaceuticals, Inc. ("Alnylam"), by its attorneys, alleges as follows for its Complaint for Patent Infringement against Defendants Pfizer Inc. and Pharmacia & Upjohn Co. LLC (collectively, "Pfizer") and BioNTech SE and BioNTech Manufacturing GmbH (collectively, "BioNTech") (Pfizer and BioNTech collectively, "Defendants").

## NATURE OF THE ACTION

1.      Alnylam is a pioneering RNA therapeutics company based in Cambridge, Massachusetts.   Over a decade ago, Alnylam invented a breakthrough class of cationic biodegradable lipids used to form lipid nanoparticles ("LNP") that carry and safely deliver in the body RNA-based therapeutics or vaccines (the "Alnylam LNP Technology").   The Alnylam LNP Technology is foundational to the success of the recently-developed messenger RNA ("mRNA") based COVID vaccines.   The United States Patent Office repeatedly recognized Alnylam's inventive work, including by issuing United States Patent Nos. 11,246,933 (the "'933 Patent),

11,382,979 (the "'979 Patent"), and 11,590,229 (the "'229 Patent") (collectively, the "Patents-in-Suit"), which are three of the patents that protect the Alnylam LNP Technology.  (Exhibits 1, 2, and 3.)  The '933 Patent issued from U.S. Application No. 17/302,311 (the "'311 Application"). (Exhibit 1.) The '979 Patent issued from U.S. Application No. 17/644,907 (the "'907 Application").  (Exhibit 2.)  The '229 Patent issued from U.S. Application No. 17/651,029 (the "'029 Application"). (Exhibit 3.)

2.      Defendants infringe Alnylam's '933 Patent through the use of ALC-0315, [1] a cationic biodegradable lipid formulated into LNPs that protect and deliver the vaccine's mRNA. Similarly, Defendants infringe Alnylam's '979 Patent and '229 Patent through the use of Alnylam's patented LNPs that protect and deliver Defendants' COVID-19 Vaccine's mRNA.  The "Defendants' Infringing LNPs" comprise four lipids: ALC-0315 (a cationic biodegradable lipid), 2-(polyethylene glycol 2000)-N,N-ditetradecylacetamide (a PEG-modified lipid), 1,2-distearoyl-sn-glycero-3-phosphocholine (DSPC), and cholesterol.

3.      Alnylam brings this action to recover monetary compensation for Defendants' unlicensed use of Alnylam's Patents-in-Suit.   Alnylam does not seek injunctive relief under 35 U.S.C. § 283 against such use.

## THE PARTIES

4.      Plaintiff Alnylam is a corporation organized under the laws of the State of Delaware with a principal place of business at 675 West Kendall Street, Henri A. Termeer Square, Cambridge, Massachusetts 02142.  Founded in 2002, Alnylam is a groundbreaking life science company that has worked to harness the potential of RNA interference ("RNAi") therapeutics to

---

[1]   ALC-0315's   chemical   name   is   ((4-hydroxybutyl)azanediyl)bis(hexane-6,1-diyl)bis(2-hexyldecanoate).  (Exhibit 6 at 22.)

transform the lives of people living with diseases that have limited or inadequate treatment options. Utilizing an earlier version of in-licensed LNP Technology, in 2018 Alnylam delivered the world's first approved RNAi therapeutic, ONPATTRO® (patisiran).  ONPATTRO® is currently approved for the treatment of polyneuropathy caused by an illness called hereditary ATTR (hATTR) amyloidosis.  Alnylam has developed an additional delivery modality distinct from LNP Technology, termed GalNAc Delivery, which is utilized in three marketed products, GIVLAARI® (givosiran), approved in 2019, and OXLUMO® (lumasiran), approved in 2020, both marketed by Alnylam and LEQVIO® (inclisiran), approved in 2021, developed initially by Alnylam and licensed to Novartis.

5.      Alnylam has a long history of licensing or offering to license to third parties its intellectual property, including the Alnylam LNP Technology and the GalNAc Technology.

6.      Upon information and belief, Defendant Pfizer Inc. is a company organized and existing under the laws of the State of Delaware with its principal place of business at 235 East 42nd Street, New York, New York 10017.  The Biologic License Approval ("BLA") Approval for COMIRNATY® is addressed to Pfizer Inc., 235 East 42nd Street, New York, NY 10017. (Exhibit 7 at 1.)  Upon information and belief, all regulatory correspondence regarding Defendants' COVID-19 Vaccine is sent to Pfizer Inc.'s principal place of business.  (Exhibit 7 at 1.)  The prescribing information for COMIRNATY®[2] states it is "[m]anufactured by Pfizer Inc."  (Exhibit 8 at 40; *see also* Exhibit 25 at 46, Exhibit 34 at 46, Exhibit 35 at 52, Exhibit 36 at 43 and Exhibit 37 at 48.)  Upon information and belief, Defendant Pfizer Inc. maintains one or more facilities, including in Kalamazoo, Michigan, under the name PfizerCentre One, as a subsidiary of Pfizer Inc. and/or Defendant Pfizer Inc. is doing business as PfizerCentre One at one or more facilities,

---

[2] Defendants' mRNA COVID-19 Vaccine is approved under the tradename COMIRNATY®.

including in Kalamazoo, Michigan.  Upon information and belief, Pfizer Laboratories, a division of Defendant Pfizer Inc., prepared the package insert for COMIRNATY® that was accepted by the FDA. (Exhibit 9 at 24.)  Upon information and belief, Defendant Pfizer Inc. recognizes the revenue from sales of Defendants' COVID-19 Vaccine.  (Exhibit 10 at 1, 4, 5, 14, 27, 29, 33-36.)

7.      Upon information and belief, Defendant Pharmacia & Upjohn Co. LLC is a company organized and existing under the laws of the State of Delaware with its principal place of business at 7000 Portage Road, Kalamazoo, MI 49001.  Upon information and belief, Defendant Pharmacia & Upjohn Co. LLC is a wholly-owned subsidiary of Defendant Pfizer Inc.  The BLA Approval Letter for COMIRNATY® states that, "[t]he final formulated product will be manufactured, filled, labeled and packaged . . . at Pharmacia & Upjohn Company LLC, 7000 Portage Road, Kalamazoo, Michigan." (Exhibit 7 at 1.)

8.      Upon information and belief, Defendant BioNTech SE is a company organized and existing under the laws of Germany, with its principal place of business located at An der Goldgrube 12 Mainz, 55131 Germany.  Its shares are traded in the United States on the NASDAQ under the symbol BNTX.

9.      Upon information and belief, Defendant BioNTech Manufacturing GmbH, is a company organized and existing under the laws of Germany, with its principal place of business located at An der Goldgrube 12 Mainz, 55131 Germany.  Upon information and belief, Defendant BioNTech Manufacturing GmbH is 100 % controlled by Defendant BioNTech SE. (Exhibit 27 at F-29.)  The prescribing information for COMIRNATY® states it is "[m]anufactured for BioNTech Manufacturing GmbH" but is "[m]anufactured by Pfizer Inc."  (Exhibit 8 at 40.)  The BLA Approval for COMIRNATY® states that the FDA is "issuing Department of Health and Human

Services U.S. License No. 2229 to BioNTech Manufacturing GmbH, Mainz, Germany." (Exhibit 7 at 1.)

10.     On information and belief, Defendants Pfizer Inc., Pharmacia & Upjohn Co. LLC, BioNTech SE, and BioNTech Manufacturing GmbH are agents of each other and/or work in concert with each other with respect to the development, regulatory approval, marketing, making, sales, offers for sale, import and export, and distribution of Defendants' COVID-19 Vaccine which contain Defendants' Infringing LNPs. One of the lipids in Defendants' Infringing LNPs is ALC-0315.

## JURISDICTION AND VENUE

11.     This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1, *et seq*.

12.     This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) because this is a civil action arising under the Patent Act.

13.     This Court has personal jurisdiction over Defendant Pfizer Inc. because it is a Delaware corporation.

14.     This Court also has jurisdiction over Defendant Pfizer Inc. because, upon information and belief, it directly or indirectly makes, uses, offers for sale, and/or sells Defendants' COVID-19 Vaccine, containing Defendants' Infringing LNPs, which include ALC-0315, throughout the United States, including in this judicial district.

15.     This Court has personal jurisdiction over Defendant Pharmacia & Upjohn Co. LLC because it is a Delaware corporation.

16.     This Court also has jurisdiction over Defendant Pharmacia & Upjohn Co. LLC because, upon information and belief, it directly or indirectly makes, uses, offers for sale, and/or

sells Defendants' COVID-19 Vaccine, comprising Defendants' Infringing LNPs, including ALC-0315, throughout the United States, including in this judicial district.

17.     This Court has jurisdiction over Defendant BioNTech SE, upon information and belief, because it directly or indirectly manufactures, uses, offers for sale, and/or sells Defendants' COVID-19 Vaccine, containing Defendants' Infringing LNPs, including ALC-0315, throughout the United States, including in this judicial district.  Further, BioNTech SE has consented to the personal jurisdiction of the Court by appearing in a litigation filed by Alnylam against Pfizer in this judicial district and filing a Counterclaim against Alnylam for a Declaratory Judgment of noninfringement and invalidity, and thus has demonstrated a willingness to engage in litigation with respect to Defendants' COVID-19 Vaccine in this forum.  *See Alnylam Pharmaceuticals Inc. v. Pfizer Inc.*, C.A. No. 22-336-CFC (D. Del.), D.I. 13 and D.I. 27.

18.     This Court has jurisdiction over Defendant BioNTech Manufacturing GmbH, upon information and belief, because it directly or indirectly, manufactures, uses, offers for sale, and/or sells Defendants' COVID-19 Vaccine, containing Defendants' Infringing LNPs, including ALC-0315, throughout the United States, including in this judicial district.  Further, BioNTech SE has consented to the personal jurisdiction of the Court by appearing in a litigation filed by Alnylam against Pfizer in this judicial district and filing a Counterclaim against Alnylam for a Declaratory Judgment of noninfringement and invalidity and thus has demonstrated a willingness to engage in litigation with respect to Defendants' COVID-19 Vaccine in this forum.  *See Alnylam Pharmaceuticals Inc. v. Pfizer Inc.*, C.A. No. 22-336-CFC (D. Del.), D.I. 13.

19.     Venue is proper with respect to Defendant Pfizer in this Court under 28 U.S.C. § 1400(b) because Defendant Pfizer Inc. is a Delaware corporation.

20.     Venue is proper with respect to Defendant Pharmacia & Upjohn Co. LLC in this Court under 28 U.S.C. § 1400(b) because Defendant Pharmacia & Upjohn Co. LLC is a Delaware corporation.

21.     Venue is proper with respect to Defendant BioNTech SE and Defendant BioNTech Manufacturing GmbH in this Court under 28 U.S.C. § 1391(c)(3) because Defendant BioNTech SE and Defendant BioNTech Manufacturing GmbH are not residents of the United States.

## BACKGROUND

### A.    RNA THERAPEUTICS

22.     The promise of RNA-based therapeutics (including RNAi and mRNA) has long been known, but scientists have struggled for decades to translate the promise into successful human therapeutics.  The main challenge scientists around the world struggled with was how to deliver the fragile, negatively charged RNA into the body's cells in a safe, effective, and non-toxic way.  (Exhibit 11 at 1-2.)

23.     One approach was to develop a lipid[3] system for use with RNA-based therapeutics. These lipids would form a nanoparticle, called a Lipid Nanoparticle or LNP.  The LNP would encapsulate and protect the fragile RNA upon administration to the body so the RNA could be delivered to the cells where the RNA would provide its therapeutic effect.  Because the RNA is negatively charged, certain of the lipids in the LNP had to be positively charged (cationic) to create the protective bubble around the RNA.  Cationic lipids do not exist in nature, and therefore had to be synthesized.  There were toxicity issues with early attempts to use them in therapeutics due to the high dose of LNP needed to be effective.

---

[3] A lipid is a molecule that is minimally soluble in water while soluble in nonpolar solvents. Examples include macro biomolecules such as fats, oils, certain vitamins, and hormones.

7

24.     To harness the full promise and power of LNPs to deliver revolutionary RNA therapies, scientists needed to develop a more potent LNP system that could safely and effectively deliver the RNA to the target cells, and then be metabolized and eliminated from the body.

25.     Alnylam overcame some of the issues associated with earlier versions of LNPs using an in-licensed LNP system containing the cationic lipid compound known as MC3, a highly potent molecule.  With MC3, Alnylam developed ONPATTRO®.  MC3, while safe and effective, is more stable in the body and thus has a relatively long half-life.  Alnylam recognized the need for further improvements in LNP technology and internally embarked on a research program to develop a new class of lipids with improved properties.

**B.     ALNYLAM'S BREAKTHROUGH BIODEGRADABLE LNP TECHNOLOGY FOR DELIVERY OF RNA TO CELLS**

26.     Over a decade ago, Alnylam scientists solved these pressing issues by inventing a new class of non-natural LNPs comprising a cationic lipid with biodegradable groups (*i.e.*, the Alnylam LNP Technology).  LNPs with these biodegradable groups protect the RNA until delivery to inside the cell, and then are metabolized and eliminated from the body ensuring no dose-limiting toxicity.  Alnylam's seminal work to create these novel biodegradable LNPs has been employed in potential RNA therapeutics in development and now mRNA-based vaccines.

**C.     THE PATENTS-IN-SUIT**

27.     Alnylam filed a series of provisional and utility patent applications on its novel cationic biodegradable lipids.  Utility applications disclosing these novel cationic biodegradable lipids published on February 2, 2012 and August 1, 2013.  At least forty-nine patents world-wide have issued to Alnylam based on these groundbreaking inventions described in its provisional and utility patent applications.

8

28.     On February 15, 2022, The United States Patent & Trademark Office issued the '933 Patent, entitled "Biodegradable Lipids for the Delivery of Active Agents." The '933 issued to Alnylam as assignee of the named inventors Martin Maier, Muthusamy Jayaraman, Akin Akinc, Shigeo Matsuda, Pachamuthu Kandasamy, Kallanthottathil G. Rajeev, and Muthiah Manoharan.

29.     The '933 Patent claims a class of cationic biodegradable lipids that can be used in the formation of LNPs for the delivery of an active agent, including mRNA. Each cationic lipid contains one or more biodegradable group.

30.     Independent claim 18 of the '933 Patent is representative and recites:

A cationic lipid comprising a primary group and two biodegradable hydrophobic tails, wherein

the primary group comprises (i) a head group that optionally comprises a primary, secondary, or tertiary amine, and (ii) a central moiety to which the head group and the two biodegradable hydrophobic tails are directly bonded;

the central moiety is a central carbon or nitrogen atom;

each biodegradable hydrophobic tail independently has the formula – (hydrophobic chain) (biodegradable group) - (hydrophobic chain), wherein the biodegradable group is -OC(O)- or -C(O)O-;

for at least on biodegradable hydrophobic tail, the terminal hydrophobic chain in the biodegradable hydrophobic tail is a branched alkyl, where the branching occurs at the $\alpha$-position relative to the biodegradable group and the biodegradable hydrophobic tail has the formula -$R^{12}$-$M^1$-$R^{13}$, where $R^{12}$ is a $C_4$-$C_{14}$alkylene or $C_4$-$C_{14}$ alkenylene, $M^1$ is the biodegradable group, $R^{13}$ is a branched $C_{10}$-$C_{20}$ alkyl, and the total carbon atom content of the tail -$R^{12}$-$M^1$-$R^{13}$ is 21 to 26;

in at least one hydrophobic tail, the biodegradable group is separated from a terminus of the hydrophobic tail by from 6 to 12 carbon atoms; and

the lipid has a pKa in the range of about 4 to about 11 and a logP of at least 10.1.

(Exhibit 1 at 538:13-38).

31.     The '933 Patent has been owned by Alnylam at all times, is fully maintained, and is valid and enforceable.

32.     On July 12, 2022, The United States Patent & Trademark Office issued the '979 Patent, entitled "Biodegradable Lipids for the Delivery of Active Agents."   The '979 Patent issued to Alnylam as assignee of the named inventors Martin Maier, Muthusamy Jayaraman, Akin Akinc, Shigeo Matsuda, Pachamuthu Kandasamy, Kallanthottathil G. Rajeev, and Muthiah Manoharan.

33.     The '979 Patent claims a class of LNPs containing cationic biodegradable lipids, distearoylphosphatidylcholine (DSPC), cholesterol, and a PEG-modified lipid for use in delivering a nucleic acid, including mRNA.

34.     Independent claim 1 of the '979 Patent is representative of the LNP composition claims and recites:

A lipid particle comprising:

(i) a nucleic acid,

(ii) 35-65 mol% of a cationic lipid,

(iii) 3-12 mol% distearoylphosphatidylcholine (DSPC),

(iv) 15-45 mol% cholesterol, and

(v) 0.5-10 mol% of a PEG-modified lipid,

wherein the mol% is based on 100% total moles of lipids in the lipid particle; and

the cationic lipid comprises a head group, two hydrophobic tails, and a central moiety to which the head group and the two hydrophobic tails are directly bonded, wherein

(a) the central moiety is a central carbon or nitrogen atom;

(b) each hydrophobic tail independently has the formula -(hydrophobic chain)-(ester group)-(hydrophobic chain), wherein the ester group is -OC(O)- or -C(O)O-; and

(c) for at least one hydrophobic tail,

(I) the terminal hydrophobic chain in the hydrophobic tail is a branched alkyl, where the branching occurs at the α-position relative to the ester group;

(II) the hydrophobic tail has the formula -$R^{12}$-$M^1$-$R^{13}$, wherein $R^{12}$ is a $C_4$-$C_{14}$ alkylene or $C_4$-$C_{14}$ alkenylene, $M^1$ is the ester group, and $R^{13}$ is a branched $C_{10}$-$C_{20}$ alkyl;

(III) the total carbon atom content of the tail -$R^{12}$-$M^1$-$R^{13}$ is 21 to 26; and

(IV) the ester group is separated from a terminus of the hydrophobic tail by from 6 to 12 carbon atoms.

(Exhibit 2 at 493:41-494:42.)

35.     Independent claim 18 of the '979 Patent is representative of the method of manufacture claims and recites:

A method for preparing a lipid particle mixture comprising mixing a first solution comprising an organic solvent, a cationic lipid, distearoylphosphatidylcholine (DSPC), cholesterol, and a PEG-modified lipid, with a second solution comprising a nucleic acid and water to form a mixture containing lipid particles, wherein each lipid particle comprises

(i) the nucleic acid,

(ii) 35-65 mol% of the cationic lipid,

(iii) 3-12 mol% distearoylphosphatidylcholine (DSPC),

(iv) 15-45 mol% cholesterol, and

(v) 0.5-10 mol% of the PEG-modified lipid, and

wherein the mol% is based on 100% total moles of lipids in the lipid particle, and

the cationic lipid comprises a head group, two hydrophobic tails and a central moiety to which the head group and the two hydrophobic tails are directly bonded, wherein

(a) the central moiety is a central carbon or nitrogen atom;

11

(b) each hydrophobic tail independently has the formula -(hydrophobic chain)-(ester group)-(hydrophobic chain), wherein the ester group is -OC(O)- or -C(O)O-; and

(c) for at least one hydrophobic tail,

(I) the terminal hydrophobic chain in the hydrophobic tail is a branched alkyl, where the branching occurs at the α-position relative to the ester group;

(II) the hydrophobic tail has the formula $-R^{12}-M^1-R^{13}$, wherein $R^{12}$ is a $C_4$-$C_{14}$ alkylene or $C_4$-$C_{14}$ alkenylene, $M^1$ is the ester group, $R^{13}$ is a branched $C_{10}$-$C_{20}$ alkyl;

(III) the total carbon atom content of the tail $-R^{12}-M^1-R^{13}$ is 21 to 26; and

(IV) the ester group is separated from a terminus of the hydrophobic tail by from 6 to 12 carbon atoms.

(Exhibit 2 at 495:42-496:19.)

36.     The '979 Patent has been owned by Alnylam at all times, is fully maintained, and is valid and enforceable.

37.      On February 28, 2023, The United States Patent & Trademark Office issued the '229 Patent, entitled "Biodegradable Lipids for the Delivery of Active Agents." The '229 issued to Alnylam as assignee of the named inventors Martin Maier, Muthusamy Jayaraman, Akin Akinc, Shigeo Matsuda, and Pachamuthu Kandasamy.

38.     The '229 Patent claims a class of LNPs and vaccines containing cationic biodegradable lipids, distearoylphosphatidylcholine (DSPC), cholesterol, and a PEG-modified lipid for use in delivering a nucleic acid, including mRNA.

39.     Independent claim 27 of the '229 Patent is representative and recites:

A vaccine comprising a lipid particle and a pharmaceutically acceptable diluent, excipient, or carrier, wherein the lipid particle comprises:

(i) a nucleic acid, wherein the nucleic acid comprises RNA,

(ii) 35-65 mol% of a protonatable lipid compound,

(iii) 3-12 mol% distearoylphosphatidylcholine (DSPC),

(iv) 15-45 mol% cholesterol, and

(v) 0.5-10 mol% of the PEG-modified lipid

wherein the mol% is based on 100% total moles of lipids in the lipid particle,

wherein the protonatable lipid compound comprises a head group, hydrophobic tails, and a central moiety to which the head group and the hydrophobic tails are directly bonded, wherein:

the central moiety is a nitrogen atom;

the hydrophobic tails consist of two hydrophobic tails;

each of the two hydrophobic tails has the formula $-R^{12}-M^1-R^{13}$, wherein:

$R^{12}$ is a $C_1$-$C_{14}$ alkyl group,

$M^1$ is -OC(O)-, and

$R^{13}$ is a $C_{10}$-$C_{20}$ branched alkyl, wherein $R^{13}$ is branched at the alpha position relative to the -OC(O)- group;

the chain length of formula $-R^{12}-M^1-R^{13}$ is 17 atoms; and

the total carbon atom content of each hydrophobic tail is 21 to 26 carbon atoms.

(Exhibit 3 at Claim 27.)

40.     The '229 Patent has been owned by Alnylam at all times, is fully maintained, and is valid and enforceable.

**D.     DEFENDANTS' COVID-19 VACCINE**

41.     On March 17, 2020, Defendants Pfizer Inc. and BioNTech SE announced a plan to jointly develop a COVID-19 vaccine.  (Exhibit 12 at 2.)  A redacted copy of the Collaboration

Agreement by and between Pfizer Inc. and BioNTech, dated March 17, 2020, is publicly available. (Exhibit 13.)  Under the Collaboration Agreement, Defendant Pfizer Inc. has the sole right in the United States to "market, promote, distribute, offer for sale, sell, have sold, import, have imported, export, have exported or otherwise commercialize" Defendants' COVID-19 Vaccine.  (Exhibit 13, §1.25 (defining "Commercialize"); §1.6 (defining "BioNTech Commercialization Territory"); §1.88 (defining "Pfizer Commercialization Territory").)   Under the Collaboration Agreement, Defendant Pfizer Inc. has the right in the United States to "make, produce, manufacture, process, fill, finish, package, label, perform quality assurance testing, release, ship or store, and for the purposes of further manufacturing, distribute, import or export" Defendants' COVID-19 Vaccine or "any component thereof."   (*Id.*, §1.75 (defining "Manufacture"); §3.2 ("Licenses for Commercial Manufacturing").)

42.     On April 9, 2020, Defendants provided additional details about this collaboration, including that "BioNTech will contribute multiple mRNA vaccine candidates as part of its BNT162 COVID-19 vaccine program" and that "Pfizer will contribute its leading global vaccine clinical research and development, regulatory, manufacturing and distribution infrastructure and capabilities."  (Exhibit 12 at 1.)

43.     On April 22, 2020, Defendants announced their first clinical trial in Germany of four mRNA vaccine candidates.  (Exhibit 14 at 1.)  Each vaccine candidate used an LNP to deliver the mRNA.  (*Id.*)

44.     On May 5, 2020, Defendants announced that the first doses of Defendants' four vaccine candidates were administered to individuals in the United States as part of Defendants' Phase 1/2 clinical trial.  (Exhibit 15 at 1.)  Defendants stated that "Pfizer plans to activate its extensive manufacturing network and invest at risk in an effort to produce an approved COVID-

19 vaccine as quickly as possible for those most in need around the world . . . . Pfizer-owned sites

in three U.S. states (Massachusetts, Michigan and Missouri) and Puurs, Belgium, have been

identified as manufacturing centers for COVID-19 vaccine production, with more sites to be

selected." (*Id.* at 2.)

45.     On July 13, 2020, Defendants announced that the FDA granted Fast Track

Designations to two of Defendants' candidate vaccines. (Exhibit 16 at 1.)  Peter Honig, Pfizer's

Senior Vice President, Global Regulatory Affairs, commented "[w]e look forward to continue

working closely with the FDA throughout the clinical development of this program, Project

Lightspeed, to evaluate the safety and efficacy of these vaccine candidates." (*Id.* at 1-2.)

46.     On July 27, 2020, Defendants announced that they had advanced the "nucleoside-

modified messenger RNA (modRNA) candidate BNT162b2,[4] which encodes an optimized SARS-

CoV-2 full-length spike glycoprotein, at a 30μg dose level in a 2 dose regimen into Phase 2/3

Study." (Exhibit 17 at 1.)  Upon information and belief, the vaccine that Defendants selected

contains Defendants' Infringing LNPs, including ALC-0315.

47.     On November 18, 2020, Defendants announced that their Phase 3 clinical trial met

all primary efficacy endpoints.  (Exhibit 18 at 1.)  Defendants stated that "[f]our of Pfizer's

facilities are part of the manufacturing and supply chain; St. Louis, MO; Andover, MA; and

Kalamazoo, MI in the U.S.; and Puurs in Belgium." (*Id.* at 2.)

48.     On December 11, 2020, the FDA authorized Defendants' BNT162b2 candidate

with the infringing LNPs made from Defendants' Infringing LNPs, including ALC-0315,

(Defendants' COVID-19 Vaccine) for emergency use against COVID-19 in individuals 16 years

---

[4] Upon information and belief, BNT162b2 was the code name for Defendants' mRNA COVID-19
Vaccine during clinical trials.  (Exhibit 4 at 21.)

of age or older.  (Exhibit 19 at 1.)  Upon information and belief, every dose of Defendants'
COVID-19 Vaccine sold pursuant to this emergency use authorization contains the infringing
LNPs.  Albert Bourla, Chairman and Chief Executive Officer of Pfizer said, "[a]s a U.S. company,
today's news brings great pride and tremendous joy that Pfizer has risen to the challenge to develop
a vaccine that has the potential to help bring an end to this devastating pandemic.  We have worked
tirelessly to make the impossible possible, steadfast in our belief that science will win."  (Exhibit
19 at 1-2.)

49.     On May 11, 2021, the FDA authorized Defendants' COVID-19 Vaccine for
emergency use against COVID-19 in children ages twelve to fifteen.  (Exhibit 20 at 1.)  Upon
information and belief, every dose of Defendants' COVID-19 Vaccine sold pursuant to this
emergency use authorization contains the infringing LNPs made with Defendants' Infringing
LNPs, including ALC-0315.

50.     On August 23, 2021, the FDA approved Defendants' COVID-19 Vaccine under the
tradename COMIRNATY® for use in individuals sixteen and over.  (Exhibit 19 at 1.)  Upon
information and belief, every dose of Defendants' COVID-19 Vaccine sold under the tradename
COMIRNATY® contains the infringing LNPs made with Defendants' Infringing LNPs, including
ALC-0315.

51.     On October 29, 2021, the FDA authorized Defendants' COVID-19 Vaccine for
emergency use against COVID-19 in children ages five to eleven.  (Exhibit 22 at 1.)  Upon
information and belief, every dose of Defendants' COVID-19 Vaccine sold pursuant to this
emergency use authorization contains the infringing LNPs made with Defendants' Infringing
LNPs, including ALC-0315.

52.     Upon information and belief, on December 16, 2021, the FDA approved a new formulation of Defendants' COVID-19 Vaccine under the tradename COMIRNATY® (gray cap) in individuals sixteen and over.  (Exhibit 23 at 1, Exhibit 24; *see also* Exhibit 8 at 1.)  Upon information and belief, Defendants continue to market their prior COVID-19 Vaccine formulation under the tradename COMIRNATY® (purple cap) for use in individuals sixteen and over.  (Exhibit 25 at 1.)  Upon information and belief, every dose of Defendants' COVID-19 Vaccine sold under the tradename COMIRNATY® (gray cap (monovalent) and purple cap)[5] contains the infringing LNPs made with Defendants' Infringing LNPs, including ALC-0315.

53.     Upon information and belief, on October 29, 2021, the FDA approved Defendants' COVID-19 Vaccine under the tradename COMIRNATY® (orange cap) in individuals 5 years through 11 years of age. (Exhibit 26 at n. 12; Exhibit 36; Exhibit 38.) Upon information and belief, on June 17, 2022, the FDA approved Defendants' COVID-19 Vaccine under the tradename COMIRNATY® (maroon cap) in individuals 6 months through 4 years of age. (Exhibit 26 at n. 19; Exhibit 34; Exhibit 39.) Upon information and belief, on August 31, 2022, the FDA approved Defendants' COVID-19 Bivalent Booster Dose under the tradename COMIRNATY® (gray cap (bivalent)) in individuals 12 years of age or older. (Exhibit 26 at n. 22; Exhibit 37; Exhibit 40.) Upon information and belief, on October 12, 2022, the FDA approved Defendants' COVID-19 Bivalent Booster Dose under the tradename COMIRNATY® (orange cap (bivalent)) in individuals 5 years through 11 years of age. (Exhibit 26 at n. 25; Exhibit 35; Exhibit 41.) Upon information and belief, every dose of Defendants' COVID-19 Vaccine sold under the tradename

---

[5] The prescribing information for both versions state that Defendant Pfizer Inc. manufactures Defendants' COVID-19 Vaccine.  (*Compare* Exhibit 8 at 40 *with* Exhibit 25 at 46.)

COMIRNATY® (maroon cap, orange cap (monovalent and bivalent) and gray cap (bivalent)) contains the infringing LNPs made with Defendants' Infringing LNPs, including ALC-0315.

54.     On February 8, 2022, Defendant Pfizer Inc. stated that it expected 2022 worldwide revenue of $32,000,000,000 for Defendants' COVID-19 Vaccine.  (Exhibit 10 at 29.)  Defendant Pfizer Inc.'s reported revenues suggest that U.S. sales in 2021 accounted for approximately 21% of the sales of Defendants' COVID-19 Vaccine in 2021.  (*Id.* at 35.)

55.     Upon information and belief, Pfizer has manufactured doses of Defendants' COVID-19 Vaccine in the United States that it has shipped to other countries, including Mexico and Canada.  (Exhibit 28). Upon information and belief, Pfizer exported those U.S.-made doses pursuant to agreements with the governments of Mexico and Canada.  (Exhibits 29, 30.)  An official from the Canadian government confirmed shipments of Defendants' COVID-19 vaccine from Kalamazoo, Michigan to Canada.  (Exhibit 31.)  A White House COVID-19 advisor confirmed that Pfizer shipped U.S.-made doses of Defendants' COVID-19 Vaccine to Mexico and Canada.  (Exhibit 31.)  Upon information and belief, Pfizer has an agreement with the Canadian government to provide Defendants' COVID-19 Vaccine through at least 2024, including "[u]p to 65 million for 2022, up to 60 million in 2023 and up to 60 million in 2024."  (Exhibit 30.)

56.     Upon information and belief, Pfizer plans to sell doses of its COVID-19 Vaccine on the private market in the United States. Specifically, on October 20, 2022, during an investor call, Pfizer revealed that it planned to charge a private-market price of between $110 - $130 per dose for its COVID-19 Vaccine. (Exhibit 42 at 8.)

**E.     ALNYLAM'S PATENTED LNP TECHNOLOGY IS ESSENTIAL TO DEFENDANTS' COVID-19 VACCINE**

57.     The patented Alnylam LNP Technology is essential to the efficacy and safety of Defendants' COVID-19 Vaccine.  mRNA is very delicate and subject to rapid degradation by

various enzymes upon administration.  (Exhibit 11 at 2.)  The large, negatively-charged mRNA strands also struggle to pass through the protective lipid membranes of cells.  (*Id.*)  Thus, to be effective, the mRNA strands require a delivery mechanism that can ensure that the mRNA strands are not degraded before delivery to the cell and can penetrate the cell.  In addition, the LNP needs to be biodegradable, *i.e.*, such that the LNPs are metabolized and eliminated after successful mRNA delivery to the cells, so as to enhance safety.

58.    Regarding these LNPs, Defendant Pfizer Inc.'s website states "[t]his tiny fat glob, known as a functional lipid, is actually one of four lipids that make up the lipid nanoparticles that go into the vaccine.  *Without these lipid nanoparticles, in fact, there could be no Pfizer-BioNTech mRNA vaccine.*  That's because mRNA, which is the genetic material that teaches our cells to make the protein that will help our immune systems produce antibodies that helps to protect us from COVID-19, is incredibly delicate."  (Exhibit 32 (emphasis added) at 2.)

## DEFENDANTS' INFRINGING ACTIVITIES

59.    On information and belief, Defendants and/or their end users employ in their COVID-19 Vaccine ALC-0315, which meets every limitation of at least claims 18, 19, and 21-28 of the '933 Patent.

60.    The Prescribing Information for COMIRNATY® states that each dose contains ((4-hydroxybutyl)azanediyl)bis(hexane-6,1-diyl)bis(2-hexyldecanoate).  (Exhibit 8 at 34.)  Upon information and belief, this document was prepared by Defendants and accepted by the FDA for distribution to providers of Defendants' COVID-19 Vaccine. Upon information and belief, 4-hydroxybutyl)azanediyl)bis(hexane-6,1-diyl)bis(2-hexyldecanoate) is known as ALC-0315.

19

61.     Upon information and belief, 4-hydroxybutyl)azanediyl)bis(hexane-6,1-diyl)bis(2-hexyldecanoate) is known as ALC-0315.   Upon information and belief, ALC-0315 has the chemical structure depicted just below:



(Exhibit 31 at 8.)

62.     Upon information and belief, ALC-0315 is in every dose of the COVID-19 Vaccine that Defendants have made, offered for sale, and sold, and will continue to do so.

63.     Attached as Exhibit 4 and incorporated herein are Alnylam's Asserted Claims and Infringement Contentions (served October 27, 2022) describing Defendants' infringement of claims 18, 19, and 21-28 of the '933 Patent. The claim chart is not intended to limit Alnylam's right to modify the chart or allege that other activities of Defendants infringe the identified claim or any other claims of the '933 Patent or any other patents.

64.     Defendants have known of the '933 Patent since at least as early as February 15, 2022, when the '933 Patent issued.

65.     On information and belief, Defendants and/or their end users employ in their COVID-19 Vaccine Defendants' Infringing LNPs, which meets every limitation of at least claims 1-4, 7, 9-20, 23, and 25-30 of the '979 Patent.

66.     The Prescribing Information for COMIRNATY® states that each dose contains "30 mcg of a nucleoside-modified messenger RNA (mRNA)[6] encoding the viral spike (S) glycoprotein of SARS-CoV-2."  (Exhibit 8 at 34).  Upon information and belief, this document was prepared by Defendants and accepted by the FDA for distribution to providers of Defendants' COVID-19 Vaccine.

67.     The Prescribing Information for COMIRNATY® states that each dose contains the following lipid mixture: "0.43 mg ((4-hydroxybutyl)azanediyl)bis(hexane-6,1-diyl)bis(2-hexyldecanoate), 0.05 mg 2-(polyethylene glycol 2000)-N,N-ditetradecylacetamide, 0.09 mg 1,2-distearoyl-sn-glycero-3-phosphocholine, and 0.19 mg cholesterol".  (Exhibit 8 at 34.)  Upon information and belief, the lipids are in molar lipid ratio of 46.3:9.4:42.7:1.6 for the ionizable cationic lipid:neutral lipid:cholesterol:PEGylated lipid.  (Exhibit 33 at 3.)

68.     Upon information and belief, 4-hydroxybutyl)azanediyl)bis(hexane-6,1-diyl)bis(2-hexyldecanoate) is known as ALC-0315.  Upon information and belief, ALC-0315 has the chemical structure depicted just below:



---

[6] mRNA is a nucleic acid.

(Exhibit 31 at 8.)

69.     Upon information and belief, Defendants' Infringing LNPs are in every dose of the COVID-19 Vaccine that Defendants have made, offered for sale, and sold, and will continue to do so.  Upon information belief, Defendants' Infringing LNPs are manufactured in a manner that uses the patented Alnylam methods.

70.     Attached as Exhibit 4 and incorporated herein are Alnylam's Asserted Claims and Infringement Contentions (served October 27, 2022) describing Defendants' infringement of claims 1-4, 7, 9-20, 23, and 25-30 of the '979 Patent. The claim chart is not intended to limit Alnylam's right to modify the chart or allege that other activities of Defendants infringe the identified claim or any other claims of the '979 Patent or any other patents.

71.     Defendants have known of the '979 Patent since at least as early as July 12, 2022, when the '979 Patent issued.  Alnylam notified Defendants of the published '907 Application on April 22, 2022, which set forth the same claims as in the subsequently-issued '979 Patent.

72.     On information and belief, Defendants and/or their end users employ in their COVID-19 Vaccine Defendants' Infringing LNPs, which meets every limitation of at least claims 27 and 28 of the '229 Patent.

73.     Attached as Exhibit 5 and incorporated herein is a preliminary claim chart describing Defendants' infringement of claims 27 and 28 of the '229 Patent. The claim chart is not intended to limit Alnylam's right to modify the chart or allege that other activities of Defendants infringe the identified claim or any other claims of the '229 Patent or any other patents.

74.     Upon information and belief, Defendants' Infringing LNPs are in every dose of the COVID-19 Vaccine that Defendants have made, offered for sale, and sold, and will continue to do so.

22

75.     Defendants have known of the '229 Patent since at least as early as February 28, 2023, when the '229 Patent issued. Alnylam notified Defendants of the published '029 Application on June 23, 2022. Alnylam informed Defendants of the Notice of Allowability and payment of issue fee for the '029 Application on January 23, 2023. Alnylam provided Defendants with the claims as allowed on the same date. The claims are publicly available and have been known to Defendants since at least December 1, 2022. Alnylam notified Defendants of the Issue Notification for the '029 Application, detailing that the application would issue February 28, 2023 as U.S. Patent No. 11,590,229, on February 9, 2023.

## FIRST CAUSE OF ACTION
### (Infringement of the '933 Patent)

76.     Alnylam realleges and incorporates by reference the allegations contained in the foregoing paragraphs.

77.     On information and belief, Defendants have infringed and will continue to infringe at least one claim of the '933 Patent, pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making, using, selling, offering to sale or importing its COVID-19 Vaccine containing ALC-0315 within the United States and without authority.

78.     Defendants, without authority, have infringed and will continue to infringe at least one of the asserted claims of the '933 Patent pursuant to 35 U.S.C. § 271(b) by actively inducing the manufacturing, using, selling, or offering for sale within the United States or importing into the United States Defendants' COVID-19 Vaccine containing ALC-0315. Each Defendant intends that the others make, use, sell, offer to sell, distribute, export, and/or import Defendants' COVID-19 Vaccine and/or its components comprising the infringing ALC-0315 biodegradable lipid with the knowledge and specific intent that the others will directly infringe Alnylam's '933 Patent. Defendants further intend that each end user, distributor, importer and/or exporter make, use, sell,

offer to sell, distribute, export, and/or import Defendants' COVID-19 Vaccine and/or its components comprising the infringing ALC-0315 biodegradable lipid with the knowledge and specific intent that such end user, distributor, importer, and/or exporter end-users directly infringe Alnylam's '933 Patent.

79.    Defendants' infringement has damaged and will continue to damage Alnylam, which is entitled to recover the damages resulting from Defendants' wrongful acts in an amount to be determined at trial, and in any event no less than a reasonable royalty.

**SECOND CAUSE OF ACTION**
**(Infringement of the '979 Patent)**

80.    Alnylam realleges and incorporates by reference the allegations contained in the foregoing paragraphs.

81.    On information and belief, Defendants have infringed and will continue to infringe at least one of the asserted claims of the '979 Patent, pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making, using, selling, or offering to sell within the United States or importing into the United States Defendants' COVID-19 Vaccine containing Defendants' Infringing LNPs without authority.

82.    Defendants without authority have infringed and will continue to infringe at least one of the asserted claims of the '979 Patent pursuant to 35 U.S.C. § 271(b) by actively inducing the manufacturing, using, selling, or offering for sale within the United States or importing into the United States Defendants' COVID-19 Vaccine containing Defendants' Infringing LNPs.  Each Defendant intends that the other Defendant makes, uses, sells, offers to sell, distributes, exports, and/or imports Defendants' COVID-19 Vaccine and/or its components comprising the infringing LNPs made with Defendants' Infringing LNPs with the knowledge and specific intent that the other Defendant will directly infringe Alnylam's '979 Patent.  Defendants further intend that each

end user, distributor, importer and/or exporter make, use, sell, offer to sell, distribute, export, and/or import Defendants' COVID-19 Vaccine and/or its components comprising Defendants' Infringing LNPs with the knowledge and specific intent that such end user, distributor, importer, and/or exporter end-users directly infringe Alnylam's '979 Patent.

83.     Defendants' infringement has damaged and will continue to damage Alnylam, which is entitled to recover the damages resulting from Defendants' wrongful acts in an amount to be determined at trial, and in any event no less than a reasonable royalty.

## THIRD CAUSE OF ACTION
### (Infringement of the '229 Patent)

84.     Alnylam realleges and incorporates by reference the allegations contained in the foregoing paragraphs.

85.     On information and belief, Defendants have infringed and will continue to infringe at least one of the asserted claims of the '229 Patent, pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making, using, selling, or offering to sell within the United States or importing into the United States Defendants' COVID-19 Vaccine containing Defendants' Infringing LNPs without authority.

86.     Defendants without authority have infringed and will continue to infringe at least one of the asserted claims of the '229 Patent pursuant to 35 U.S.C. § 271(b) by actively inducing the manufacturing, using, selling, or offering for sale within the United States or importing into the United States Defendants' COVID-19 Vaccine containing Defendants' Infringing LNPs. Each Defendant intends that the other Defendant makes, uses, sells, offers to sell, distributes, exports, and/or imports Defendants' COVID-19 Vaccine and/or its components comprising the infringing LNPs made with Defendants' Infringing LNPs with the knowledge and specific intent that the other Defendant will directly infringe Alnylam's '229 Patent. Defendants further intend that each

end user, distributor, importer and/or exporter make, use, sell, offer to sell, distribute, export, and/or import Defendants' COVID-19 Vaccine and/or its components comprising Defendants' Infringing LNPs with the knowledge and specific intent that such end user, distributor, importer, and/or exporter end-users directly infringe Alnylam's '229 Patent.

87.     Defendants' infringement has damaged and will continue to damage Alnylam, which is entitled to recover the damages resulting from Defendants' wrongful acts in an amount to be determined at trial, and in any event no less than a reasonable royalty.

## PRAYER FOR RELIEF

WHEREFORE, Alnylam prays for a judgment in its favor and against Defendants and respectfully requests the following relief:

A.     A judgment that Defendants directly infringe the '933 Patent;

B.     A judgment that Defendants induce infringement of the '933 Patent;

C.     A judgment that Defendants directly infringe the '979 Patent;

D.     A judgment that Defendants induce infringement of the '979 Patent;

E.     A judgement that Defendants directly infringe the '229 Patent;

F.     A judgment that Defendants induce infringement of the '229 Patent;

G.     Damages or other monetary relief, including post-judgment monetary relief and pre- and post-judgment interest;

H.     Costs and expenses in this action; and

I.     An order awarding Alnylam any such other relief as the Court may deem just and proper under the circumstances, except that Alnylam does not seek any form of injunctive relief.

## JURY DEMAND

26

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Alnylam hereby demands a jury trial as to all issues so triable.

McDERMOTT WILL & EMERY LLP

OF COUNSEL:

William G. Gaede, III
McDERMOTT WILL & EMERY LLP
415 Mission Street, Suite 5600
San Francisco, CA  94105
(650) 815-7400

Sarah Chapin Columbia
Sarah J. Fischer
McDERMOTT WILL & EMERY LLP
200 Clarendon Street, Floor 58
Boston, MA  02116-5021
(617) 535-4000

Ian B. Brooks
McDERMOTT WILL & EMERY LLP
500 N. Capitol Street NW
Washington, DC 20003
(202) 756-8000

Bhanu K. Sadasivan, Ph.D.
McDERMOTT WILL & EMERY LLP
650 Live Oak Avenue, Suite 300
Menlo Park, CA 94025-4885
(650) 815-7537

Dated:

*/s/ Ethan H. Townsend*
Ethan H. Townsend (#5813)
The Nemours Building
1007 North Orange Street, 10th Floor
Wilmington, DE  19801
(302) 485-3910
ehtownsend@mwe.com

*Attorneys for Alnylam Pharmaceuticals, Inc.*

27

# EXHIBIT 2

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ALNYLAM PHARMACEUTICALS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. _____ |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| PFIZER INC. and PHARMACIA & | ) | |
| UPJOHN CO. LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Alnylam Pharmaceuticals, Inc. ("Alnylam"), by its attorneys, alleges as follows for its Complaint for Patent Infringement against Defendants Pfizer Inc. and Pharmacia & Upjohn Co. LLC (collectively, "Defendants").

## NATURE OF THE ACTION

1.      Alnylam is a pioneering RNA therapeutics company based in Cambridge, Massachusetts.  Over a decade ago, Alnylam invented a breakthrough class of cationic biodegradable lipids used to form lipid nanoparticles ("LNP") that carry and safely deliver in the body RNA-based therapeutics or vaccines (the "Alnylam LNP Technology").  The Alnylam LNP Technology is foundational to the success of the recently-developed messenger RNA ("mRNA") based COVID vaccines.  The United States Patent Office recognized Alnylam's inventive work, issuing United States Patent No. 11,246,933 (the "'933 Patent") that protects the Alnylam LNP Technology.  (Exhibit 1.)

2.      Defendants' mRNA COVID-19 uses a cationic biodegradable lipid covered by '933 Patent.  Specifically, Defendants infringe Alnylam's '933 Patent through the use of ALC-

0315,[1] a cationic biodegradable lipid formulated into LNPs that protect and deliver the vaccine's mRNA. Alnylam brings this action to recover monetary compensation for Defendants' unlicensed use of Alnylam's '933 Patent. Alnylam does not seek injunctive relief under 35 U.S.C. § 283 against such use.

## THE PARTIES

3.    Plaintiff Alnylam is a corporation organized under the laws of the State of Delaware with a principal place of business at 675 West Kendall Street, Henri A. Termeer Square, Cambridge, Massachusetts 02142. Founded in 2002, Alnylam is a groundbreaking life science company that has worked to harness the potential of RNA interference ("RNAi") therapeutics to transform the lives of people living with diseases that have limited or inadequate treatment options. Utilizing an earlier version of in-licensed LNP Technology, in 2018 Alnylam delivered the world's first approved RNAi therapeutic, ONPATTRO® (patisiran). ONPATTRO® is currently approved for the treatment of polyneuropathy caused by an illness called hereditary ATTR (hATTR) amyloidosis. Alnylam has developed an additional delivery modality distinct from LNP Technology, termed GalNAc Delivery, which is utilized in three marketed products, GIVLAARI® (givosiran), approved in 2019, and OXLUMO® (lumasiran), approved in 2020, both marketed by Alnylam and LEQVIO®(inclisiran), approved in 2021, developed initially by Alnylam and licensed to Novartis.

4.    Alnylam has a long history of licensing or offering to license to third parties its intellectual property, including the Alnylam LNP Technology and the GalNAc Technology.

5.    Upon information and belief, Defendant Pfizer Inc. is a company organized and existing under the laws of the State of Delaware with its principal place of business at 235 East

---

[1]    ALC-0315's chemical name is ((4-hydroxybutyl)azanediyl)bis(hexane-6,1-diyl)bis(2-hexyldecanoate). (Exhibit 5 at 22.)

2

42nd Street, New York, New York 10017.  The Biologic License Approval ("BLA") Approval for COMIRANTY® is addressed to Pfizer Inc., 235 East 42nd Street, New York, NY 10017. (Exhibit 3 at 1.)  Upon information and belief, all regulatory correspondence regarding Defendants' COVID-19 Vaccine is sent to Pfizer Inc.'s principal place of business.  (Exhibit 3 at 1.)  The prescribing information for COMIRNATY®[2] states it is "[m]anufactured by Pfizer Inc."  (Exhibit 4 at 20.)  Upon information and belief, Defendant Pfizer Inc. maintains one or more facilities, including in Kalamazoo, Michigan, under the name PfizerCentre One, as a subsidiary of Pfizer Inc. and/or Defendant Pfizer Inc. is doing business as PfizerCentre One at one or more facilities, including in Kalamazoo, Michigan.  Upon information and belief, Pfizer Laboratories, a division of Defendant Pfizer Inc., prepared the package insert for COMIRNATY® that was accepted by the FDA. (Exhibit 7 at 19.) Upon information and belief, Defendant Pfizer Inc. recognizes the revenue from sales of Defendants' COVID-19 Vaccine.   (Exhibit 6 at 1, 4, 5, 14, 27, 29, 33-36.)

6.      Upon information and belief, Defendant Pharmacia & Upjohn Co. LLC is a company organized and existing under the laws of the State of Delaware with its principal place of business at 100 Route 206 N, Peapack, New Jersey, 07977.  Upon information and belief, Defendant Pharmacia & Upjohn Co. LLC is a wholly-owned subsidiary of Defendant Pfizer Inc. The BLA Approval Letter for COMIRNATY® states that, "[t]he final formulated product will be manufactured, filled, labeled and packaged . . . at Pharmacia & Upjohn Company LLC, 7000 Portage Road, Kalamazoo, Michigan."  (Exhibit 3 at 1.)

7.      On information and belief, Defendants Pfizer Inc. and Pharmacia & Upjohn Co. LLC are agents of each other and/or work in concert with each other with respect to the

---

[2] Defendants' mRNA COVID-19 Vaccine is approved under the tradename COMIRNATY®.

3

development, regulatory approval, marketing, making, sales, offers for sale, import and export, and distribution of Defendants' COVID-19 Vaccine containing ALC-0315.

## JURISDICTION AND VENUE

8.      This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1, *et seq*.

9.      This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) because this is a civil action arising under the Patent Act.

10.      This Court has personal jurisdiction over Defendant Pfizer Inc. because it is a Delaware corporation.

11.      This Court also has jurisdiction over Defendant Pfizer Inc. because, upon information and belief, it directly or indirectly makes, uses, offers for sale, and/or sells Defendants' COVID-19 Vaccine, containing ALC-0315, throughout the United States, including in this judicial district.

12.      This Court has personal jurisdiction over Defendant Pharmacia & Upjohn Co. LLC because it is a Delaware corporation.

13.      This Court also has jurisdiction over Defendant Pharmacia & Upjohn Co. LLC because, upon information and belief, it directly or indirectly makes, uses, offers for sale, and/or sells Defendants' COVID-19 Vaccine,   containing ALC-0315, throughout the United States, including in this judicial district.

14.      Venue is proper in this Court under 28 U.S.C. § 1400(b) because Defendant Pfizer Inc. is a Delaware corporation.

15.      Venue is proper in this Court under 28 U.S.C. § 1400(b) because Defendant Pharmacia & Upjohn Co. LLC is a Delaware corporation.

## BACKGROUND

### A. RNA THERAPEUTICS

16.     The promise of RNA-based therapeutics (including RNAi and mRNA) has long been known, but scientists have struggled for decades to translate the promise into successful human therapeutics.  The  main challenge scientists around the world struggled with was how to deliver the fragile, negatively charged RNA into the body's cells in a safe, effective, and non-toxic way.  (Exhibit 8 at 1-2.)

17.     One approach was to develop a lipid[3] system for use with RNA-based therapeutics. These lipids would form a nanoparticle, called a Lipid Nanoparticle or LNP.  The LNP would encapsulate and protect the fragile RNA upon administration to the body so the RNA could be delivered to the cells where the RNA would provide its therapeutic effect.  Because the RNA is negatively charged, the lipids had to be positively charged (cationic) to create the protective bubble around the RNA.  Cationic lipids do not exist in nature, and therefore had to be synthesized.  There were toxicity issues with early attempts to use them in therapeutics due to the high dose of LNP needed to be effective.

18.     To harness the full promise and power of LNPs to deliver revolutionary RNA therapies, scientists needed to develop a more potent LNP system that could safely and effectively deliver the RNA to the target cells, and then be metabolized and eliminated from the body.

19.     Alnylam overcame some of the issues associated with earlier versions of LNPs using an in-licensed LNP system containing the cationic lipid compound known as MC3, a highly potent molecule.  With MC3, Alnylam developed ONPATTRO®.  MC3, while safe and effective, is more stable in the body and thus has a relatively long half-life.  Alnylam recognized the need

---

[3] A lipid is a molecule that is minimally soluble in water while soluble in nonpolar solvents. Examples include macro biomolecules such as fats, oils, certain vitamins, and hormones.

for further improvements in LNP technology and internally embarked on a research program to develop a new class of lipids with improved properties.

### B. ALNYLAM'S BREAKTHROUGH BIODEGRADABLE LNP TECHNOLOGY FOR DELIVERY OF RNA TO CELLS

20.     Over a decade ago, Alnylam scientists solved these pressing issues by inventing a new class of non-natural LNPs comprising a cationic lipid with biodegradable groups (*i.e.*, the Alnylam LNP Technology).  LNPs with these biodegradable groups protect the RNA until delivery to inside the cell, and then are metabolized and eliminated from the body ensuring no dose-limiting toxicity.  Alnylam's seminal work to create these novel biodegradable LNPs has been employed in potential RNA therapeutics in development  and now mRNA-based vaccines.

### C. THE PATENT-IN-SUIT

21.     Alnylam filed a series of provisional and utility patent applications on its novel cationic biodegradable lipids.  Utility applications disclosing these novel cationic biodegradable lipids published on February 2, 2012 and August 1, 2013.  Twenty-two patents world-wide have issued to Alnylam based on these groundbreaking inventions described in its provisional and utility patent applications.

22.     On February 15, 2022, The United States Patent & Trademark Office issued the '933 Patent, entitled "Biodegradable Lipids for the Delivery of Active Agents."   The '933 Patent issued to Alnylam as assignee of the named inventors Martin Maier, Muthusamy Jayaraman, Akin Akinc, Shigeo Matsuda, Pachamuthu Kandasamy, Kallanthottathil G. Rajeev, and Muthiah Manoharan.

23.     The '933 Patent claims a class of cationic biodegradable lipids that can be used in the formation of LNPs for the delivery of an active agent, including mRNA.  Each cationic lipid contains one or more biodegradable group.

6

24.     Independent claim 18 of the '933 Patent is representative and recites:

A cationic lipid comprising a primary group and two biodegradable hydrophobic tails, wherein

the primary group comprises (i) a head group that optionally comprises a primary, secondary, or tertiary amine, and (ii) a central moiety to which the head group and the two biodegradable hydrophobic tails are directly bonded;

the central moiety is a central carbon or nitrogen atom;

each biodegradable hydrophobic tail independently has the formula -(hydrophobic chain)(biodegradable group )-(hydrophobic chain), wherein the biodegradable group is -OC(O)- or -C(O)O-;

for at least one biodegradable hydrophobic tail, the terminal hydrophobic chain in the biodegradable hydrophobic tail is a branched alkyl, where the branching occurs at the α-position relative to the biodegradable group and the biodegradable hydrophobic tail has the formula $-R^{12}-M^1-R^{13}$, where $R^{12}$ is a $C_4$-$C_{14}$ alkylene or $C_4$-$C_{14}$ alkenylene, $M^1$ is the biodegradable group, $R^{13}$ is a branched $C_{10}$-$C_{20}$ alkyl, and the total carbon atom content of the tail $-R^{12}-M^1-R^{13}$ is 21 to 26;

in at least one hydrophobic tail, the biodegradable group is separated from a terminus of the hydrophobic tail by from 6 to 12 carbon atoms; and

the lipid has a pKa in the range of about 4 to about 11 and a logP of at least 10.1.

(Exhibit 1 at 538:13-38.)

25.     The '933 Patent has been owned by Alnylam at all times, is fully maintained, and is valid and enforceable.

**D.     DEFENDANTS' COVID-19 VACCINE**

26.     On March 17, 2020, Defendant Pfizer Inc. and BioNTech SE ("BioNTech") announced a plan to jointly develop a COVID-19 vaccine.  (Exhibit 9 at 2.)  A redacted copy of the Collaboration Agreement by and between Pfizer Inc. and BioNTech, dated March 17, 2020, is publicly available.  (Exhibit 10.)  Under the Collaboration Agreement, Defendant Pfizer Inc. has the sole right in the United States to "market, promote, distribute, offer for sale, sell, have sold, import, have imported, export, have exported or otherwise commercialize" Defendants' COVID-

19 Vaccine. (Exhibit 10, §1.25 (defining "Commercialize"); §1.6 (defining "BioNTech Commercialization Territory"); §1.88 (defining "Pfizer Commercialization Territory")).) Under the Collaboration Agreement, Defendant Pfizer Inc. has the right in the United States to "make, produce, manufacture, process, fill, finish, package, label, perform quality assurance testing, release, ship or store, and for the purposes of further manufacturing, distribute, import or export" Defendants' COVID-19 Vaccine or "any component thereof." (*Id.*, §1.75 (defining "Manufacture"); §3.2 ("Licenses for Commercial Manufacturing")).)

27.    On April 9, 2020, Defendants provided additional details about this collaboration, including that "BioNTech will contribute multiple mRNA vaccine candidates as part of its BNT162 COVID-19 vaccine program" and that "Pfizer will contribute its leading global vaccine clinical research and development, regulatory, manufacturing and distribution infrastructure and capabilities." (Exhibit 9 at 1.)

28.    On April 22, 2020, Defendants announced their first clinical trial in Germany of four mRNA vaccine candidates. (Exhibit 11 at 1.) Each vaccine candidate used an LNP to deliver the mRNA. (*Id.*)

29.    On May 5, 2020, Defendants announced that the first doses of Defendants' four vaccine candidates were administered to individuals in the United States as part of Defendants' Phase 1/2 clinical trial. (Exhibit 12 at 1.) Defendants stated that "Pfizer plans to activate its extensive manufacturing network and invest at risk in an effort to produce an approved COVID-19 vaccine as quickly as possible for those most in need around the world. . . . Pfizer-owned sites in three U.S. states (Massachusetts, Michigan and Missouri) and Puurs, Belgium, have been identified as manufacturing centers for COVID-19 vaccine production, with more sites to be selected." (*Id.* at 2.)

30.     On July 13, 2020, Defendants announced that the FDA granted Fast Track Designations to two of Defendants' candidate vaccines.  (Exhibit 13 at 1.)  Peter Honig, Pfizer's Senior Vice President, Global Regulatory Affairs, commented "[w]e look forward to continue working closely with the FDA throughout the clinical development of this program, Project Lightspeed, to evaluate the safety and efficacy of these vaccine candidates." (*Id.* at 1-2.)

31.     On July 27, 2020, Defendants announced that they had advanced the "nucleoside-modified messenger RNA (modRNA) candidate BNT162b2,[4] which encodes an optimized SARS-CoV-2 full-length spike glycoprotein, at a 30µg dose level in a 2 dose regimen into Phase 2/3 Study."  (Exhibit 14 at 1.)  Upon information and belief, the vaccine that Defendants selected contains the infringing ALC-0315 cationic lipid.

32.     On November 18, 2020, Defendants announced that their Phase 3 clinical trial met all primary efficacy endpoints.  (Exhibit 15 at 1.)  Defendants stated that "[f]our of Pfizer's facilities are part of the manufacturing and supply chain; St. Louis, MO; Andover, MA; and Kalamazoo, MI in the U.S.; and Puurs in Belgium." (*Id.* at 2.)

33.     On December 11, 2020, the FDA authorized Defendants' BNT162b2 candidate with the infringing ALC-0315 cationic LNP (Defendants' COVID-19 Vaccine) for emergency use against COVID-19 in individuals 16 years of age or older.  (Exhibit 16 at 1.)  Upon information and belief, every dose of Defendants' COVID-19 Vaccine sold pursuant to this emergency use authorization contains the infringing ALC-0315 cationic lipid.  Albert Bourla, Chairman and Chief Executive Officer of Pfizer said, "As a U.S. company, today's news brings great pride and tremendous joy that Pfizer has risen to the challenge to develop a vaccine that has the potential to

---

[4] Upon information and belief, BNT162b2 was the code name for Defendants' mRNA COVID-19 Vaccine during clinical trials.  (Exhibit 5 at 21.)

help bring an end to this devastating pandemic.  We have worked tirelessly to make the impossible possible, steadfast in our belief that science will win."  (Exhibit 16 at 1-2.)

34.     On May 11, 2021, the FDA authorized Defendants' COVID-19 Vaccine for emergency use against COVID-19 in children ages twelve to fifteen.  (Exhibit 17 at 1.)  Upon information and belief, every dose of Defendants' COVID-19 Vaccine sold pursuant to this emergency use authorization contains the infringing ALC-0315 cationic lipid.

35.     On August 23, 2021, the FDA approved Defendants' COVID-19 Vaccine under the tradename COMIRNATY® for use in individuals sixteen and over.  (Exhibit 18 at 1.)  Upon information and belief, every dose of Defendants' COVID-19 Vaccine sold under the tradename COMIRNATY® contains the infringing ALC-0315 cationic lipid.

36.     On October 29, 2021, the FDA authorized Defendants' COVID-19 Vaccine for emergency use against COVID-19 in children ages five to eleven.  (Exhibit 19 at 1.)  Upon information and belief, every dose of Defendants' COVID-19 Vaccine sold pursuant to this emergency use authorization contains the infringing ALC-0315 cationic lipid.

37.     Upon information and belief, on December 16, 2021, the FDA approved a new formulation of Defendants' COVID-19 Vaccine under the tradename COMIRNATY® (gray cap) in individuals sixteen and over.  (Exhibit 22 at 1, Exhibit 23; *see also* Exhibit 4 at 1.)  Upon information and belief, Defendants continue to market their prior COVID-19 Vaccine formulation under the tradename COMIRNATY® (purple cap) for use in individuals sixteen and over.  (Exhibit 24 at 1.)  Upon information and belief, every dose of Defendants' COVID-19 Vaccine sold under

the tradename COMIRNATY® (gray cap and purple cap)[5] contains the infringing ALC-0315 cationic lipid.

38.     On February 8, 2022, Defendant Pfizer Inc. stated that it expected 2022 worldwide revenue of $32,000,000,000 for Defendants' COVID-19 Vaccine.  (Exhibit 6 at 29.)  Defendant Pfizer Inc.'s reported revenues suggest that U.S. sales in 2021 accounted for approximately 21% of the sales of Defendants' COVID-19 Vaccine in 2021.  (*Id.* at 35.)

### E.     ALNYLAM'S PATENTED LNP TECHNOLOGY IS ESSENTIAL TO DEFENDANTS' COVID-19 VACCINE

39.     The patented Alnylam LNP Technology is essential to the efficacy and safety of Defendants' COVID-19 Vaccine.  mRNA is very delicate and subject to rapid degradation by various enzymes upon administration.  (Exhibit 8 at 2.)  The large, negatively-charged mRNA strands also struggle to pass through the protective lipid membranes of cells.  (*Id.*)  Thus, to be effective, the mRNA strands require a delivery mechanism that can ensure that the mRNA strands are not degraded before delivery to the cell and can penetrate the cell.  In addition, the LNP needs to be biodegradable, *i.e.*, such that the LNPs are metabolized and eliminated after successful mRNA delivery to the cells, so as to enhance safety.

40.     Regarding these LNPs, Defendant Pfizer Inc.'s website states "[t]his tiny fat glob, known as a functional lipid, is actually one of four lipids that make up the lipid nanoparticles that go into the vaccine.  *Without these lipid nanoparticles, in fact, there could be no Pfizer-BioNTech mRNA vaccine.*  That's because mRNA, which is the genetic material that teaches our cells to make the protein that will help our immune systems produce antibodies that helps to protect us from COVID-19, is incredibly delicate."  (Exhibit 20 (emphasis added) at 2.)

---

[5] The prescribing information for both versions state that Defendant Pfizer Inc. manufactures Defendants' COVID-19 Vaccine.  (*Compare* Exhibit 4 at 20 *with* Exhibit 24 at 22.)

## DEFENDANTS' INFRINGING ACTIVITIES

41.     On information and belief, Defendants and/or their end users employ in their COVID-19 Vaccine ALC-0315, which meets every limitation of at least claims 18, 19, 21, 22, and 24-27 of the '933 Patent.

42.     The Prescribing Information for COMIRNATY® states that each dose contains ((4-hydroxybutyl)azanediyl)bis(hexane-6,1-diyl)bis(2-hexyldecanoate).  (Exhibit 4 at 15.)   Upon information and belief, this document was prepared by Defendants and accepted by the FDA for distribution to providers of Defendants' COVID-19 Vaccine.  Upon information and belief, 4-hydroxybutyl)azanediyl)bis(hexane-6,1-diyl)bis(2-hexyldecanoate) is known as ALC-0315.

43.     Upon information and belief, ALC-0315 has the chemical structure depicted just below:



(Exhibit 21 at 8.)

44.     Upon information and belief, ALC-0315 is in every dose of the COVID-19 Vaccine that Defendants have made, offered for sale, and sold, and will continue to do so.

45.     Attached as Exhibit 2 is a preliminary claim chart describing Defendants' infringement of claims 18, 19, 21, 22, and 24-27 of the '933 Patent.  Exhibits 4, 5, 21, 25, and 26

are supporting documents for the chart. The claim chart is not intended to limit Alnylam's right to modify the chart or allege that other activities of Defendants infringe the identified claim or any other claims of the '933 Patent or any other patents.

46. Defendants have known of the '933 Patent since at least as early as February 15, 2022, when the '933 Patent issued.

**FIRST CAUSE OF ACTION**
**(Infringement of the '933 Patent)**

47. Alnylam realleges and incorporates by reference the allegations contained in the foregoing paragraphs.

48. On information and belief, Defendants have infringed and will continue to infringe at least one of the asserted claims of the '933 Patent, pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making, using, selling, or offering to sell within the United States or importing into the United States Defendants' COVID-19 Vaccine containing ALC-0315 without authority.

49. Defendants without authority have infringed and will continue to infringe at least one of the asserted claims of the '933 Patent pursuant to 35 U.S.C. § 271(b) by actively inducing the making, using, selling, or offering for sale within the United States or importing into the United States Defendants' COVID-19 Vaccine containing ALC-0315. Each Defendant intends that the other Defendant makes, uses, sells, offers to sell, distributes, exports, and/or imports Defendants' COVID-19 Vaccine and/or its components comprising the infringing ALC-0315 biodegradable lipid with the knowledge and specific intent that the other Defendant will directly infringe Alnylam's '933 Patent. Defendants further intend that each end user, distributor, importer and/or exporter make, use, sell, offer to sell, distribute, export, and/or import Defendants' COVID-19 Vaccine and/or its components comprising the infringing ALC-0315 biodegradable lipid with the

13

knowledge and specific intent that such end user, distributor, importer, and/or exporter end-users directly infringe Alnylam's '933 Patent.

50.     Defendants' infringement has damaged and will continue to damage Alnylam, which is entitled to recover the damages resulting from Defendants' wrongful acts in an amount to be determined at trial, and in any event no less than a reasonable royalty.

## PRAYER FOR RELIEF

WHEREFORE, Alnylam prays for a judgment in its favor and against Defendants and respectfully requests the following relief:

A.     A judgment that Defendants directly infringe the '933 Patent;

B.     A judgment that Defendants induce infringement of the '933 Patent;

C.     Damages or other monetary relief, including post-judgment monetary relief and pre- and post-judgment interest;

D.     Costs and expenses in this action; and

E.     An order awarding Alnylam any such other relief as the Court may deem just and proper under the circumstances, except that Alnylam does not seek any form of injunctive relief.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Alnylam hereby demands a jury trial as to all issues so triable.

14

MCDERMOTT WILL & EMERY LLP

OF COUNSEL:

William G. Gaede, III
MCDERMOTT WILL & EMERY LLP
415 Mission Street, Suite 5600
San Francisco, CA 94105
(650) 815-7400

Sarah Chapin Columbia
Sarah J. Fischer
MCDERMOTT WILL & EMERY LLP
200 Clarendon Street, Floor 58
Boston, MA 02116-5021
(617) 535-4000

Ian B. Brooks
MCDERMOTT WILL & EMERY LLP
500 N. Capitol Street NW
Washington, DC 20003
(202) 756-8000

Dated:  March 17, 2022

/s/ Ethan H. Townsend
_____
Ethan H. Townsend (#5813)
The Nemours Building
1007 North Orange Street, 10th Floor
Wilmington, DE  19801
(302) 485-3910
ehtownsend@mwe.com

*Attorneys for Alnylam Pharmaceuticals, Inc.*

15

# EXHIBIT 3

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

ALNYLAM PHARMACEUTICALS, INC., ~~))~~

                                   Plaintiff, ~~)~~

                                           ~~)~~

~~v.  )~~

v.

PFIZER INC. ~~and,~~ PHARMACIA & ~~→~~
UPJOHN CO. LLC, ~~→~~ BIONTECH SE, AND BIONTECH MANUFACTURING GMBH,

                                  Defendants. ~~→~~

                            ~~))~~

~~C.A.  No.~~ Civil Action No. 22-336-CFC (CONSOLIDATED)

DEMAND FOR JURY TRIAL ~~DEMANDED~~

## FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Alnylam Pharmaceuticals, Inc. ("Alnylam"), by its attorneys, alleges as follows

1

for its Complaint for Patent Infringement against Defendants Pfizer Inc. and Pharmacia & Upjohn Co. LLC (collectively, "Pfizer") and BioNTech SE and BioNTech Manufacturing GmbH (collectively, "BioNTech") (Pfizer and BioNTech collectively, "Defendants").

## NATURE OF THE ACTION

1.      Alnylam is a pioneering RNA therapeutics company based in Cambridge, Massachusetts. Over a decade ago, Alnylam invented a breakthrough class of cationic biodegradable lipids used to form lipid nanoparticles ("LNP") that carry and safely deliver in the body RNA-based therapeutics or vaccines (the "Alnylam LNP Technology"). The Alnylam LNP Technology is foundational to the success of the recently-developed messenger RNA ("mRNA") based COVID vaccines. The United States Patent Office repeatedly recognized Alnylam's inventive work, including by issuing United States Patent ~~No~~Nos. 11,246,933 (the "'933 Patent~~"~~) ~~that protects the Alnylam LNP Technology. (Exhibit 1.)~~

~~2.Defendants' mRNA COVID-19 uses a cationic biodegradable lipid covered by '933 Patent. Specifically,~~ ),

11,382,979 (the "'979 Patent"), and 11,590,229 (the "'229 Patent") (collectively, the "Patents-in-Suit"), which are three of the patents that protect the Alnylam LNP Technology. (Exhibits 1, 2, and 3.) The '933 Patent issued from U.S. Application No. 17/302,311 (the "'311 Application"). (Exhibit 1.) The '979 Patent issued from U.S. Application No. 17/644,907 (the "'907 Application"). (Exhibit 2.) The '229 Patent issued from U.S. Application No. 17/651,029 (the "'029 Application"). (Exhibit 3.)

2.      Defendants infringe Alnylam's '933 Patent through the use of ALC-0315, [1] a

cationic biodegradable lipid formulated into LNPs that protect and deliver the vaccine's mRNA.

Similarly, Defendants infringe Alnylam's '979 Patent and '229 Patent through the use of

Alnylam's patented LNPs that protect and deliver Defendants' COVID-19 Vaccine's mRNA.

The "Defendants' Infringing LNPs" comprise four lipids: ALC-0315 (a cationic biodegradable

lipid), 2-(polyethylene glycol 2000)-N,N-ditetradecylacetamide (a PEG-modified lipid),

1,2-distearoyl- sn-glycero-3-phosphocholine (DSPC), and cholesterol.

3.      Alnylam brings this action to recover monetary compensation for Defendants'

unlicensed use of Alnylam's '933 PatentPatents-in-Suit. Alnylam does not seek injunctive relief

under 35

U.S.C. § 283 against such use.

**THE PARTIES**

4.      3.Plaintiff Alnylam is a corporation organized under the laws of the State of

Delaware with a principal place of business at 675 West Kendall Street, Henri A. Termeer

Square, Cambridge, Massachusetts 02142. Founded in 2002, Alnylam is a groundbreaking life

science company that has worked to harness the potential of RNA interference ("RNAi")

therapeutics to

transform the lives of people living with diseases that have limited or inadequate treatment

options. Utilizing an earlier version of in-licensed LNP Technology, in 2018 Alnylam delivered

---

1.      [1]   ALC-0315's chemical      name is

((4-hydroxybutyl)azanediyl)bis(hexane-6,1-diyl)bis(2- hexyldecanoate). (Exhibit 56 at 22.)

3

the world's first approved RNAi therapeutic, ONPATTRO® (patisiran). ONPATTRO® is currently approved for the treatment of polyneuropathy caused by an illness called hereditary ATTR (hATTR) amyloidosis. Alnylam has developed an additional delivery modality distinct from LNP Technology, termed GalNAc Delivery, which is utilized in three marketed products, GIVLAARI® (givosiran), approved in 2019, and OXLUMO® (lumasiran), approved in 2020, both marketed by Alnylam and LEQVIO® (inclisiran), approved in 2021, developed initially by Alnylam and licensed to Novartis.

5. 4.Alnylam has a long history of licensing or offering to license to third parties its intellectual property, including the Alnylam LNP Technology and the GalNAc Technology.

6. 5.Upon information and belief, Defendant Pfizer Inc. is a company organized and existing under the laws of the State of Delaware with its principal place of business at 235 East

42nd Street, New York, New York 10017. The Biologic License Approval ("BLA") Approval for COMIRANTY COMIRNATY® is addressed to Pfizer Inc., 235 East 42nd Street, New York, NY 10017. (Exhibit 3 7 at 1.) Upon information and belief, all regulatory correspondence regarding Defendants' COVID-19 Vaccine is sent to Pfizer Inc.'s principal place of business. (Exhibit 3 7 at 1.) The prescribing information for COMIRNATY®[2] states it is "[m]anufactured by Pfizer Inc." (Exhibit 4 8 at 20 40; *see also* Exhibit 25 at 46, Exhibit 34 at 46, Exhibit 35 at 52, Exhibit 36 at 43 and Exhibit 37 at 48.) Upon information and belief, Defendant Pfizer Inc. maintains one or more facilities, including in Kalamazoo, Michigan, under the name PfizerCentre One, as a subsidiary of Pfizer Inc. and/or Defendant Pfizer Inc. is doing business as PfizerCentre One at one or more facilities,

including in Kalamazoo, Michigan. Upon information and belief, Pfizer Laboratories, a division of Defendant Pfizer Inc., prepared the package insert for COMIRNATY® that was accepted by the FDA. (Exhibit 7 9 at 19 24.) Upon information and belief, Defendant Pfizer Inc. recognizes the revenue from sales of Defendants' COVID-19 Vaccine. (Exhibit 6 10 at 1, 4, 5, 14, 27, 29, 33-36.)

---

[2] Defendants' mRNA COVID-19 Vaccine is approved under the tradename COMIRNATY®.

7.    6.Upon information and belief, Defendant Pharmacia & Upjohn Co. LLC is a company organized and existing under the laws of the State of Delaware with its principal place of business at 100 Route 206 N, Peapack, New Jersey, 079777000 Portage Road, Kalamazoo, MI 49001. Upon information and belief, Defendant Pharmacia & Upjohn Co. LLC is a wholly-owned subsidiary of Defendant Pfizer Inc. The BLA Approval Letter for COMIRNATY® states that, "[t]he final formulated product will be manufactured, filled, labeled and packaged . . . at Pharmacia & Upjohn Company LLC, 7000 Portage Road, Kalamazoo, Michigan." (Exhibit 37 at 1.)

8.    Upon information and belief, Defendant BioNTech SE is a company organized and existing under the laws of Germany, with its principal place of business located at An der Goldgrube 12 Mainz, 55131 Germany. Its shares are traded in the United States on the NASDAQ under the symbol BNTX.

9.    Upon information and belief, Defendant BioNTech Manufacturing GmbH, is a company organized and existing under the laws of Germany, with its principal place of business located at An der Goldgrube 12 Mainz, 55131 Germany. Upon information and belief, Defendant BioNTech Manufacturing GmbH is 100 % controlled by Defendant BioNTech SE. (Exhibit 27 at F-29.) The prescribing information for COMIRNATY® states it is "[m]anufactured for BioNTech Manufacturing GmbH" but is "[m]anufactured by Pfizer Inc." (Exhibit 8 at 40.) The BLA Approval for COMIRNATY® states that the FDA is "issuing Department of Health and Human

Services U.S. License No. 2229 to BioNTech Manufacturing GmbH, Mainz, Germany." (Exhibit 7 at 1.)

10.    7.On information and belief, Defendants Pfizer Inc. and, Pharmacia & Upjohn Co.

5

LLC, BioNTech SE, and BioNTech Manufacturing GmbH are agents of each other and/or work in concert with each other with respect to the

² Defendants' mRNA COVID-19 Vaccine is approved under the tradename COMIRNATY®. development, regulatory approval, marketing, making, sales, offers for sale, import and export, and distribution of Defendants' COVID-19 Vaccine containing which contain Defendants' Infringing LNPs. One of the lipids in Defendants' Infringing LNPs is ALC- 0315.

## JURISDICTION AND VENUE

11. 8. This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1, *et seq*.

12. 9. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) because this is a civil action arising under the Patent Act.

13. 10. This Court has personal jurisdiction over Defendant Pfizer Inc. because it is a Delaware corporation.

14. 11. This Court also has jurisdiction over Defendant Pfizer Inc. because, upon information and belief, it directly or indirectly makes, uses, offers for sale, and/or sells Defendants' COVID-19 Vaccine, containing Defendants' Infringing LNPs, which include ALC-0315, throughout the United States, including in this judicial district.

15. 12. This Court has personal jurisdiction over Defendant Pharmacia & Upjohn Co. LLC because it is a Delaware corporation.

16. 13. This Court also has jurisdiction over Defendant Pharmacia & Upjohn Co. LLC because, upon information and belief, it directly or indirectly makes, uses, offers for sale, and/or

6

sells Defendants' COVID-19 Vaccine, ~~containing~~comprising Defendants' Infringing LNPs, including ALC- 0315, throughout the United States, including in this judicial district.

17.     This Court has jurisdiction over Defendant BioNTech SE, upon information and belief, because it directly or indirectly manufactures, uses, offers for sale, and/or sells Defendants' COVID-19 Vaccine, containing Defendants' Infringing LNPs, including ALC-0315, throughout the United States, including in this judicial district. Further, BioNTech SE has consented to the personal jurisdiction of the Court by appearing in a litigation filed by Alnylam against Pfizer in this judicial district and filing a Counterclaim against Alnylam for a Declaratory Judgment of noninfringement and invalidity, and thus has demonstrated a willingness to engage in litigation with respect to Defendants' COVID-19 Vaccine in this forum. *See Alnylam Pharmaceuticals Inc.*

v.     *Pfizer Inc.*, C.A. No. 22-336-CFC (D. Del.), D.I. 13 and D.I. 27.

18.     This Court has jurisdiction over Defendant BioNTech Manufacturing GmbH, upon information and belief, because it directly or indirectly, manufactures, uses, offers for sale, and/or sells Defendants' COVID-19 Vaccine, containing Defendants' Infringing LNPs, including ALC- 0315, throughout the United States, including in this judicial district. Further, BioNTech SE has consented to the personal jurisdiction of the Court by appearing in a litigation filed by Alnylam against Pfizer in this judicial district and filing a Counterclaim against Alnylam for a Declaratory Judgment of noninfringement and invalidity and thus has demonstrated a willingness to engage in litigation with respect to Defendants' COVID-19 Vaccine in this forum. *See Alnylam Pharmaceuticals Inc. v. Pfizer Inc.*, C.A. No. 22-336-CFC (D. Del.), D.I. 13.

19.     ~~14.~~Venue is proper with respect to Defendant Pfizer in this Court under 28 U.S.C. § 1400(b) because Defendant Pfizer Inc. is a Delaware corporation.

7

20.    ~~15.~~Venue is proper with respect to Defendant Pharmacia & Upjohn Co. LLC in this Court under 28 U.S.C. § 1400(b) because Defendant Pharmacia & Upjohn Co. LLC is a Delaware corporation.

21.    Venue is proper with respect to Defendant BioNTech SE and Defendant BioNTech Manufacturing GmbH in this Court under 28 U.S.C. § 1391(c)(3) because Defendant BioNTech SE and Defendant BioNTech Manufacturing GmbH are not residents of the United States.

**BACKGROUND**

A.    **RNA ~~THERAPEUTICS~~THERAPEUTICS**

22.    ~~16.~~The promise of RNA-based therapeutics (including RNAi and mRNA) has long been known, but scientists have struggled for decades to translate the promise into successful human therapeutics. The main challenge scientists around the world struggled with was how to deliver the fragile, negatively charged RNA into the body's cells in a safe, effective, and non-toxic way. (Exhibit ~~8~~11 at 1-2.)

23.    ~~17.~~One approach was to develop a lipid[3] system for use with RNA-based therapeutics.

These lipids would form a nanoparticle, called a Lipid Nanoparticle or LNP. The LNP would encapsulate and protect the fragile RNA upon administration to the body so the RNA could be delivered to the cells where the RNA would provide its therapeutic effect. Because the RNA is negatively charged, certain of the lipids in the LNP had to be positively charged (cationic) to create the protective bubble around the RNA. Cationic lipids do not exist in nature, and therefore

---

2.    [3] A lipid is a molecule that is minimally soluble in water while soluble in nonpolar solvents. Examples include macro biomolecules such as fats, oils, certain vitamins, and hormones.

had to be synthesized. There were toxicity issues with early attempts to use them in therapeutics due to the high dose of LNP needed to be effective.

24. ~~18.~~To harness the full promise and power of LNPs to deliver revolutionary RNA therapies, scientists needed to develop a more potent LNP system that could safely and effectively deliver the RNA to the target cells, and then be metabolized and eliminated from the body.

25. ~~19.~~Alnylam overcame some of the issues associated with earlier versions of LNPs using an in-licensed LNP system containing the cationic lipid compound known as MC3, a highly potent molecule. With MC3, Alnylam developed ONPATTRO®. MC3, while safe and effective, is more stable in the body and thus has a relatively long half-life. Alnylam recognized the need for further improvements in LNP technology and internally embarked on a research program to develop a new class of lipids with improved properties.

**B.** ~~**A**LNYLAM'S **B**REAKTHROUGH **B**IODEGRADABLE **LNP** **T**ECHNOLOGY **FOR**~~**A**LNYLAM'S **B**REAKTHROUGH **B**IODEGRADABLE **LNP** **T**ECHNOLOGY FOR **D**ELIVERY OF **RNA** TO **C**ELLS

26. ~~20.~~Over a decade ago, Alnylam scientists solved these pressing issues by inventing a new class of non-natural LNPs comprising a cationic lipid with biodegradable groups (*i.e.*, the Alnylam LNP Technology). LNPs with these biodegradable groups protect the RNA until delivery to inside the cell, and then are metabolized and eliminated from the body ensuring no dose-limiting toxicity. Alnylam's seminal work to create these novel biodegradable LNPs has been employed in potential RNA therapeutics in development and now mRNA-based vaccines.

**C.** ~~**T**HE **P**ATENT-IN-**S**UIT~~**T**HE **P**ATENTS-IN-**S**UIT

27. ~~21.~~Alnylam filed a series of provisional and utility patent applications on its novel

cationic biodegradable lipids. Utility applications disclosing these novel cationic biodegradable lipids published on February 2, 2012 and August 1, 2013. ~~Twenty two~~At least forty-nine patents world-wide have issued to Alnylam based on these groundbreaking inventions described in its provisional and utility patent applications.

28.     ~~22.~~On February 15, 2022, The United States Patent & Trademark Office issued the '933 Patent, entitled "Biodegradable Lipids for the Delivery of Active Agents." The '933 ~~Patent~~ issued to Alnylam as assignee of the named inventors Martin Maier, Muthusamy Jayaraman, Akin Akinc, Shigeo Matsuda, Pachamuthu Kandasamy, Kallanthottathil G. Rajeev, and Muthiah Manoharan.

29.     ~~23.~~The '933 Patent claims a class of cationic biodegradable lipids that can be used in the formation of LNPs for the delivery of an active agent, including mRNA. Each cationic lipid contains one or more biodegradable group.

30.     ~~24.~~Independent claim 18 of the '933 Patent is representative and recites:

A cationic lipid comprising a primary group and two biodegradable hydrophobic tails, wherein

the primary group comprises (i) a head group that optionally comprises a primary, secondary, or tertiary amine, and (ii) a central moiety to which the head group and the two biodegradable hydrophobic tails are directly bonded;

the central moiety is a central carbon or nitrogen atom;

each biodegradable hydrophobic tail independently has the formula -- (hydrophobic chain) (biodegradable group ) - (hydrophobic chain), wherein the biodegradable group is -OC(O)- or -C(O)O-;

for at least ~~one~~on biodegradable hydrophobic tail, the terminal hydrophobic chain in the biodegradable hydrophobic tail is a branched alkyl, where the branching occurs at the $\alpha$-position relative to the biodegradable group and the biodegradable hydrophobic tail has the formula $-R^{12}-M^1-R^{13}$, where $R^{12}$ is a $C_4$- $C_{14}$ alkylene or $C_4$-$C_{14}$ alkenylene, $M^1$ is the biodegradable group, $R^{13}$ is a branched $C_{10}$-$C_{20}$ alkyl, and the total carbon atom content of the tail $-R^{12}-M^1-R^{13}$ is 21 to 26;

10

in at least one hydrophobic tail, the biodegradable group is separated from a terminus of the hydrophobic tail by from 6 to 12 carbon atoms; and

the lipid has a pKa in the range of about 4 to about 11 and a logP of at least 10.1.

(Exhibit 1 at 538:13-38.).

31.    25.The '933 Patent has been owned by Alnylam at all times, is fully maintained, and is valid and enforceable.

32.    On July 12, 2022, The United States Patent & Trademark Office issued the '979 Patent, entitled "Biodegradable Lipids for the Delivery of Active Agents." The '979 Patent issued to Alnylam as assignee of the named inventors Martin Maier, Muthusamy Jayaraman, Akin Akinc, Shigeo Matsuda, Pachamuthu Kandasamy, Kallanthottathil G. Rajeev, and Muthiah Manoharan.

33.    The '979 Patent claims a class of LNPs containing cationic biodegradable lipids, distearoylphosphatidylcholine (DSPC), cholesterol, and a PEG-modified lipid for use in delivering a nucleic acid, including mRNA.

34.    Independent claim 1 of the '979 Patent is representative of the LNP composition claims and recites:

A lipid particle comprising:

(i) a nucleic acid,

(ii) 35-65 mol% of a cationic lipid,

(iii) 3-12 mol% distearoylphosphatidylcholine (DSPC),

(iv) 15-45 mol% cholesterol, and

(v) 0.5-10 mol% of a PEG-modified lipid,

wherein the mol% is based on 100% total moles of lipids in the lipid particle; and

11

the cationic lipid comprises a head group, two hydrophobic tails, and a central moiety to which the head group and the two hydrophobic tails are directly bonded, wherein

(a) the central moiety is a central carbon or nitrogen atom;

(b) each hydrophobic tail independently has the formula -(hydrophobic chain)-(ester group)-(hydrophobic chain), wherein the ester group is -OC(O)- or -C(O)O-; and

(c) for at least one hydrophobic tail,

(I) the terminal hydrophobic chain in the hydrophobic tail is a branched alkyl, where the branching occurs at the α-position relative to the ester group;

(II) the hydrophobic tail has the formula $-R^{12}-M^1-R^{13}$, wherein $R^{12}$ is a $C_4$-$C_{14}$ alkylene or $C_4$-$C_{14}$ alkenylene, $M^1$ is the ester group, and $R^{13}$ is a branched $C_{10}$-$C_{20}$ alkyl;

(III) the total carbon atom content of the tail $-R^{12}-M^1-R^{13}$ is 21 to 26; and

(IV) the ester group is separated from a terminus of the hydrophobic tail by from 6 to 12 carbon atoms.

(Exhibit 2 at 493:41-494:42.)

35.      Independent claim 18 of the '979 Patent is representative of the method of manufacture claims and recites:

A method for preparing a lipid particle mixture comprising mixing a first solution comprising an organic solvent, a cationic lipid, distearoylphosphatidylcholine (DSPC), cholesterol, and a PEG-modified lipid, with a second solution comprising a nucleic acid and water to form a mixture containing lipid particles, wherein each lipid particle comprises

(i) the nucleic acid,

(ii) 35-65 mol% of the cationic lipid,

(iii) 3-12 mol% distearoylphosphatidylcholine (DSPC),

(iv) 15-45 mol% cholesterol, and

(v) 0.5-10 mol% of the PEG-modified lipid, and

12

wherein the mol% is based on 100% total moles of lipids in the lipid particle, and

the cationic lipid comprises a head group, two hydrophobic tails and a central moiety to which the head group and the two hydrophobic tails are directly bonded, wherein

(a) the central moiety is a central carbon or nitrogen atom;

(b) each hydrophobic tail independently has the formula -(hydrophobic chain)-(ester group)-(hydrophobic chain), wherein the ester group is -OC(O)- or -C(O)O-; and

(c) for at least one hydrophobic tail,

(I) the terminal hydrophobic chain in the hydrophobic tail is a branched alkyl, where the branching occurs at the α-position relative to the ester group;

(II) the hydrophobic tail has the formula -$R^{12}$-$M^1$-$R^{13}$, wherein $R^{12}$ is a $C_4$-$C_{14}$ alkylene or $C_4$-$C_{14}$ alkenylene, $M^1$ is the ester group, $R^{13}$ is a branched $C_{10}$-$C_{20}$ alkyl;

(III) the total carbon atom content of the tail -$R^{12}$-$M^1$-$R^{13}$ is 21 to 26; and

(IV) the ester group is separated from a terminus of the hydrophobic tail by from 6 to 12 carbon atoms.

(Exhibit 2 at 495:42-496:19.)

36.     The '979 Patent has been owned by Alnylam at all times, is fully maintained, and is valid and enforceable.

37.     On February 28, 2023, The United States Patent & Trademark Office issued the '229 Patent, entitled "Biodegradable Lipids for the Delivery of Active Agents." The '229 issued to Alnylam as assignee of the named inventors Martin Maier, Muthusamy Jayaraman, Akin Akinc, Shigeo Matsuda, and Pachamuthu Kandasamy.

38.     The '229 Patent claims a class of LNPs and vaccines containing cationic

13

biodegradable lipids, distearoylphosphatidylcholine (DSPC), cholesterol, and a PEG-modified lipid for use in delivering a nucleic acid, including mRNA.

39.    Independent claim 27 of the '229 Patent is representative and recites:

A vaccine comprising a lipid particle and a pharmaceutically acceptable diluent, excipient, or carrier, wherein the lipid particle comprises:

(i) a nucleic acid, wherein the nucleic acid comprises RNA,

(ii) 35-65 mol% of a protonatable lipid compound,

(iii) 3-12 mol% distearoylphosphatidylcholine (DSPC),

(iv) 15-45 mol% cholesterol, and

(v) 0.5-10 mol% of the PEG-modified lipid

wherein the mol% is based on 100% total moles of lipids in the lipid particle,

wherein the protonatable lipid compound comprises a head group, hydrophobic tails, and a central moiety to which the head group and the hydrophobic tails are directly bonded, wherein:

the central moiety is a nitrogen atom;

the hydrophobic tails consist of two hydrophobic tails;

each of the two hydrophobic tails has the formula $-R^{12}-M^1-R^{13}$, wherein:

$R^{12}$ is a $C_1$-$C_{14}$ alkyl group, $M^1$ is -OC(O)-, and

$R^{13}$ is a $C_{10}$-$C_{20}$ branched alkyl, wherein $R^{13}$ is branched at the alpha position relative to the -OC(O)- group;

the chain length of formula $-R^{12}-M^1-R^{13}$ is 17 atoms; and

the total carbon atom content of each hydrophobic tail is 21 to 26 carbon atoms.

(Exhibit 3 at Claim 27.)

40.    The '229 Patent has been owned by Alnylam at all times, is fully maintained, and

14

is valid and enforceable.

### D.   DEFENDANTS' COVID-19 VACCINE

41.   26.On March 17, 2020, DefendantDefendants Pfizer Inc. and BioNTech SE ("BioNTech") announced a plan to jointly develop a COVID-19 vaccine. (Exhibit 912 at 2.) A redacted copy of the Collaboration

Agreement by and between Pfizer Inc. and BioNTech, dated March 17, 2020, is publicly available. (Exhibit 1013.) Under the Collaboration Agreement, Defendant Pfizer Inc. has the sole right in the United States to "market, promote, distribute, offer for sale, sell, have sold, import, have imported, export, have exported or otherwise commercialize" Defendants' COVID-19 Vaccine. (Exhibit 1013, §1.25 (defining "Commercialize"); §1.6 (defining "BioNTech Commercialization Territory");

§1.88 (defining "Pfizer Commercialization Territory").) Under the Collaboration Agreement, Defendant Pfizer Inc. has the right in the United States to "make, produce, manufacture, process, fill, finish, package, label, perform quality assurance testing, release, ship or store, and for the purposes of further manufacturing, distribute, import or export" Defendants' COVID-19 Vaccine or "any component thereof." (*Id.*, §1.75 (defining "Manufacture"); §3.2 ("Licenses for Commercial Manufacturing").)

42.   27.On April 9, 2020, Defendants provided additional details about this collaboration, including that "BioNTech will contribute multiple mRNA vaccine candidates as part of its BNT162 COVID-19 vaccine program" and that "Pfizer will contribute its leading global vaccine clinical research and development, regulatory, manufacturing and distribution infrastructure and capabilities." (Exhibit 912 at 1.)

43.   28.On April 22, 2020, Defendants announced their first clinical trial in Germany

15

of four mRNA vaccine candidates. (Exhibit ~~11~~14 at 1.) Each vaccine candidate used an LNP to deliver the mRNA. (*Id*.)

44. ~~29.~~On May 5, 2020, Defendants announced that the first doses of Defendants' four vaccine candidates were administered to individuals in the United States as part of Defendants' Phase 1/2 clinical trial. (Exhibit ~~12~~15 at 1.) Defendants stated that "Pfizer plans to activate its extensive manufacturing network and invest at risk in an effort to produce an approved COVID-

19 vaccine as quickly as possible for those most in need around the world Pfizer-owned sites in three U.S. states (Massachusetts, Michigan and Missouri) and Puurs, Belgium, have been identified as manufacturing centers for COVID-19 vaccine production, with more sites to be selected." (*Id.* at 2.)

45. ~~30.~~On July 13, 2020, Defendants announced that the FDA granted Fast Track Designations to two of Defendants' candidate vaccines. (Exhibit ~~13~~16 at 1.) Peter Honig, Pfizer's Senior Vice President, Global Regulatory Affairs, commented "[w]e look forward to continue working closely with the FDA throughout the clinical development of this program, Project Lightspeed, to evaluate the safety and efficacy of these vaccine candidates." (*Id.* at 1-2.)

46. ~~31.~~On July 27, 2020, Defendants announced that they had advanced the "nucleoside- modified messenger RNA (modRNA) candidate BNT162b2,[4] which encodes an optimized SARS- CoV-2 full-length spike glycoprotein, at a 30µg dose level in a 2 dose regimen into Phase 2/3 Study." (Exhibit ~~14~~17 at 1.) Upon information and belief, the vaccine that Defendants selected contains ~~the infringing~~Defendants' Infringing LNPs, including ALC-0315 ~~cationic lipid~~.

47. ~~32.~~On November 18, 2020, Defendants announced that their Phase 3 clinical trial

met all primary efficacy endpoints. (Exhibit ~~15~~18 at 1.) Defendants stated that "[f]our of Pfizer's facilities are part of the manufacturing and supply chain; St. Louis, MO; Andover, MA; and Kalamazoo, MI in the U.S.; and Puurs in Belgium." (*Id.* at 2.)

48.    ~~33.~~On December 11, 2020, the FDA authorized Defendants' BNT162b2 candidate with the infringing LNPs made from Defendants' Infringing LNPs, including ALC-0315 ~~cationic LNP~~, (Defendants' COVID-19 Vaccine) for emergency use against COVID-19 in individuals 16 years

---

of age or older. (Exhibit ~~16~~19 at 1.) Upon information and belief, every dose of Defendants' COVID-19 Vaccine sold pursuant to this emergency use authorization contains the infringing ~~ALC-0315 cationic lipid~~LNPs. Albert Bourla, Chairman and Chief Executive Officer of Pfizer said, "~~As~~[a]s a U.S. company, today's news brings great pride and tremendous joy that Pfizer has risen to the challenge to develop a vaccine that has the potential to

help bring an end to this devastating pandemic. We have worked tirelessly to make the impossible possible, steadfast in our belief that science will win." (Exhibit ~~16~~19 at 1-2.)

49.    ~~34.~~On May 11, 2021, the FDA authorized Defendants' COVID-19 Vaccine for emergency use against COVID-19 in children ages twelve to fifteen. (Exhibit ~~17~~20 at 1.) Upon information and belief, every dose of Defendants' COVID-19 Vaccine sold pursuant to this emergency use authorization contains the infringing LNPs made with Defendants' Infringing LNPs, including ALC-0315 ~~cationic lipid~~.

50.    ~~35.~~On August 23, 2021, the FDA approved Defendants' COVID-19 Vaccine under the tradename COMIRNATY® for use in individuals sixteen and over. (Exhibit ~~18~~19 at 1.)

17

Upon information and belief, every dose of Defendants' COVID-19 Vaccine sold under the tradename COMIRNATY® contains the infringing LNPs made with Defendants' Infringing LNPs, including ALC-0315 cationic lipid.

51.    36.On October 29, 2021, the FDA authorized Defendants' COVID-19 Vaccine for emergency use against COVID-19 in children ages five to eleven. (Exhibit 1922 at 1.) Upon information and belief, every dose of Defendants' COVID-19 Vaccine sold pursuant to this emergency use authorization contains the infringing LNPs made with Defendants' Infringing LNPs, including ALC-0315 cationic lipid.

52.    37.Upon information and belief, on December 16, 2021, the FDA approved a new formulation of Defendants' COVID-19 Vaccine under the tradename COMIRNATY® (gray cap) in individuals sixteen and over. (Exhibit 2223 at 1, Exhibit 2324; *see also* Exhibit 48 at 1.) Upon information and belief, Defendants continue to market their prior COVID-19 Vaccine formulation under the tradename COMIRNATY® (purple cap) for use in individuals sixteen and over. (Exhibit 2425 at 1.) Upon information and belief, every dose of Defendants' COVID-19 Vaccine sold under the tradename COMIRNATY® (gray cap (monovalent) and purple cap)[5] contains the infringing LNPs made with Defendants' Infringing LNPs, including ALC-0315 cationic lipid.

53.    Upon information and belief, on October 29, 2021, the FDA approved Defendants' COVID-19 Vaccine under the tradename COMIRNATY® (orange cap) in

---

3.    [5] The prescribing information for both versions state that Defendant Pfizer Inc. manufactures Defendants' COVID-19 Vaccine. (*Compare* Exhibit 48 at 2040 *with* Exhibit 2425 at 2246.)

individuals 5 years through 11 years of age. (Exhibit 26 at n. 12; Exhibit 36; Exhibit 38.) Upon information and belief, on June 17, 2022, the FDA approved Defendants' COVID-19 Vaccine under the tradename COMIRNATY® (maroon cap) in individuals 6 months through 4 years of age. (Exhibit 26 at n. 19; Exhibit 34; Exhibit 39.) Upon information and belief, on August 31, 2022, the FDA approved Defendants' COVID-19 Bivalent Booster Dose under the tradename COMIRNATY® (gray cap (bivalent)) in individuals 12 years of age or older. (Exhibit 26 at n. 22; Exhibit 37; Exhibit 40.) Upon information and belief, on October 12, 2022, the FDA approved Defendants' COVID-19 Bivalent Booster Dose under the tradename COMIRNATY® (orange cap (bivalent)) in individuals 5 years through 11 years of age. (Exhibit 26 at n. 25; Exhibit 35; Exhibit 41.) Upon information and belief, every dose of Defendants' COVID-19 Vaccine sold under the tradename

_____

COMIRNATY® (maroon cap, orange cap (monovalent and bivalent) and gray cap (bivalent)) contains the infringing LNPs made with Defendants' Infringing LNPs, including ALC-0315.

54.    38.On February 8, 2022, Defendant Pfizer Inc. stated that it expected 2022 worldwide revenue of $32,000,000,000 for Defendants' COVID-19 Vaccine. (Exhibit 610 at 29.) Defendant Pfizer Inc.'s reported revenues suggest that U.S. sales in 2021 accounted for approximately 21% of the sales of Defendants' COVID-19 Vaccine in 2021. (*Id.* at 35.)

55.    E.ALNYLAM'S PATENTED LNP TECHNOLOGY IS ESSENTIAL TO DEFENDANTS' COVID-19 VACCINEUpon information and belief, Pfizer has manufactured doses of Defendants' COVID-19 Vaccine in the United States that it has shipped to other countries, including Mexico and Canada. (Exhibit 28). Upon information and belief, Pfizer exported those U.S.-made doses

19

pursuant to agreements with the governments of Mexico and Canada. (Exhibits 29, 30.) An official from the Canadian government confirmed shipments of Defendants' COVID-19 vaccine from Kalamazoo, Michigan to Canada. (Exhibit 31.) A White House COVID-19 advisor confirmed that Pfizer shipped U.S.-made doses of Defendants' COVID-19 Vaccine to Mexico and Canada. (Exhibit 31.) Upon information and belief, Pfizer has an agreement with the Canadian government to provide Defendants' COVID-19 Vaccine through at least 2024, including "[u]p to 65 million for 2022, up to 60 million in 2023 and up to 60 million in 2024." (Exhibit 30.)

56.     Upon information and belief, Pfizer plans to sell doses of its COVID-19 Vaccine on the private market in the United States. Specifically, on October 20, 2022, during an investor call, Pfizer revealed that it planned to charge a private-market price of between $110 - $130 per dose for its COVID-19 Vaccine. (Exhibit 42 at 8.)

**E.     ALNYLAM'S PATENTED LNP TECHNOLOGY IS ESSENTIAL TO DEFENDANTS' COVID-19 VACCINE**

57.     39.The patented Alnylam LNP Technology is essential to the efficacy and safety of Defendants' COVID-19 Vaccine. mRNA is very delicate and subject to rapid degradation by various enzymes upon administration. (Exhibit 811 at 2.) The large, negatively-charged mRNA strands also struggle to pass through the protective lipid membranes of cells. (*Id.*) Thus, to be effective, the mRNA strands require a delivery mechanism that can ensure that the mRNA strands are not degraded before delivery to the cell and can penetrate the cell. In addition, the LNP needs to be biodegradable, *i.e.*, such that the LNPs are metabolized and eliminated after successful mRNA delivery to the cells, so as to enhance safety.

58.     40.Regarding these LNPs, Defendant Pfizer Inc.'s website states "[t]his tiny fat glob, known as a functional lipid, is actually one of four lipids that make up the lipid

nanoparticles that go into the vaccine. *Without these lipid nanoparticles, in fact, there could be no Pfizer-BioNTech mRNA vaccine.* That's because mRNA, which is the genetic material that teaches our cells to make the protein that will help our immune systems produce antibodies that helps to protect us from COVID-19, is incredibly delicate." (Exhibit ~~20~~32 (emphasis added) at 2.)

## DEFENDANTS' INFRINGING ACTIVITIES

59.   ~~41.~~On information and belief, Defendants and/or their end users employ in their COVID-19 Vaccine ALC-0315, which meets every limitation of at least claims 18, 19, ~~21, 22, and 24-27~~21-28 of the '933 Patent.

60.   ~~42.~~The Prescribing Information for COMIRNATY® states that each dose contains ((4- hydroxybutyl)azanediyl)bis(hexane-6,1-diyl)bis(2-hexyldecanoate). (Exhibit ~~4~~8 at ~~15~~34.) Upon information and belief, this document was prepared by Defendants and accepted by the FDA for distribution to providers of Defendants' COVID-19 Vaccine. Upon information and belief, 4- hydroxybutyl)azanediyl)bis(hexane-6,1-diyl)bis(2-hexyldecanoate) is known as ALC-0315.

61.   ~~43.~~Upon                information                and                belief, 4-hydroxybutyl)azanediyl)bis(hexane-6,1-diyl)bis(2- hexyldecanoate) is known as ALC-0315. Upon information and belief, ALC-0315 has the chemical structure depicted just below:

(Exhibit ~~21~~31 at 8.)

62.    ~~44.~~Upon information and belief, ALC-0315 is in every dose of the COVID-19 Vaccine that Defendants have made, offered for sale, and sold, and will continue to do so.

63.    ~~45.~~Attached as Exhibit ~~2 is a preliminary claim chart~~4 and incorporated herein are Alnylam's Asserted Claims and Infringement Contentions (served October 27, 2022) describing Defendants' infringement of claims 18, 19, ~~21, 22,~~ and ~~24-27~~21-28 of the '933 Patent. ~~Exhibits 4, 5, 21, 25, and 26~~

~~are supporting documents for the chart.~~ The claim chart is not intended to limit Alnylam's right to modify the chart or allege that other activities of Defendants infringe the identified claim or any other claims of the '933 Patent or any other patents.

64.   ~~46.~~Defendants have known of the '933 Patent since at least as early as February 15, 2022, when the '933 Patent issued.

65.   On information and belief, Defendants and/or their end users employ in their COVID-19 Vaccine Defendants' Infringing LNPs, which meets every limitation of at least claims 1-4, 7, 9-20, 23, and 25-30 of the '979 Patent.

66.   The Prescribing Information for COMIRNATY® states that each dose contains "30 mcg of a nucleoside-modified messenger RNA (mRNA)[6] encoding the viral spike (S) glycoprotein of SARS-CoV-2." (Exhibit 8 at 34). Upon information and belief, this document was prepared by Defendants and accepted by the FDA for distribution to providers of Defendants' COVID-19 Vaccine.

67.   The Prescribing Information for COMIRNATY® states that each dose contains the following lipid mixture: "0.43 mg ((4-hydroxybutyl)azanediyl)bis(hexane-6,1-diyl)bis(2-hexyldecanoate), 0.05 mg 2-(polyethylene glycol 2000)-N,N-ditetradecylacetamide, 0.09 mg 1,2-distearoyl-sn-glycero-3-phosphocholine, and 0.19 mg cholesterol". (Exhibit 8 at 34.) Upon information and belief, the lipids are in molar lipid ratio of 46.3:9.4:42.7:1.6 for the ionizable cationic lipid:neutral lipid:cholesterol:PEGylated lipid. (Exhibit 33 at 3.)

68.   Upon information and belief, 4-hydroxybutyl)azanediyl)bis(hexane-6,1-diyl)bis(2-hexyldecanoate) is known as ALC-0315. Upon information and belief, ALC-0315 has the chemical structure depicted just below:

---

4.   [6] mRNA is a nucleic acid.

(Exhibit 31 at 8.)

69.    Upon information and belief, Defendants' Infringing LNPs are in every dose of the COVID-19 Vaccine that Defendants have made, offered for sale, and sold, and will continue to do so. Upon information belief, Defendants' Infringing LNPs are manufactured in a manner that uses the patented Alnylam methods.

70.    Attached as Exhibit 4 and incorporated herein are Alnylam's Asserted Claims and Infringement Contentions (served October 27, 2022) describing Defendants' infringement of claims 1-4, 7, 9-20, 23, and 25-30 of the '979 Patent. The claim chart is not intended to limit Alnylam's right to modify the chart or allege that other activities of Defendants infringe the identified claim or any other claims of the '979 Patent or any other patents.

71.    Defendants have known of the '979 Patent since at least as early as July 12, 2022, when the '979 Patent issued. Alnylam notified Defendants of the published '907 Application on April 22, 2022, which set forth the same claims as in the subsequently-issued '979 Patent.

72.    On information and belief, Defendants and/or their end users employ in their COVID-19 Vaccine Defendants' Infringing LNPs, which meets every limitation of at least

claims 27 and 28 of the '229 Patent.

73.     Attached as Exhibit 5 and incorporated herein is a preliminary claim chart describing Defendants' infringement of claims 27 and 28 of the '229 Patent. The claim chart is not intended to limit Alnylam's right to modify the chart or allege that other activities of Defendants infringe the identified claim or any other claims of the '229 Patent or any other patents.

74.     Upon information and belief, Defendants' Infringing LNPs are in every dose of the COVID-19 Vaccine that Defendants have made, offered for sale, and sold, and will continue to do so.

75.     Defendants have known of the '229 Patent since at least as early as February 28, 2023, when the '229 Patent issued. Alnylam notified Defendants of the published '029 Application on June 23, 2022. Alnylam informed Defendants of the Notice of Allowability and payment of issue fee for the '029 Application on January 23, 2023. Alnylam provided Defendants with the claims as allowed on the same date. The claims are publicly available and have been known to Defendants since at least December 1, 2022. Alnylam notified Defendants of the Issue Notification for the '029 Application, detailing that the application would issue February 28, 2023 as U.S. Patent No. 11,590,229, on February 9, 2023.

**FIRST CAUSE OF ACTION**
**(Infringement of the '933 Patent)**

76.     47.Alnylam realleges and incorporates by reference the allegations contained in the foregoing paragraphs.

77.     48.On information and belief, Defendants have infringed and will continue to infringe at least one of the asserted claimsclaim of the '933 Patent, pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making, using, selling, or offering to sell

~~within the United States~~sale or importing ~~into the United States Defendants'~~its COVID-19 Vaccine containing ALC-0315 within the United States and without authority.

78.  ~~49.~~Defendants, without authority, have infringed and will continue to infringe at least one of the asserted claims of the '933 Patent pursuant to 35 U.S.C. § 271(b) by actively inducing the ~~making~~manufacturing, using, selling, or offering for sale within the United States or importing into the United States Defendants' COVID-19 Vaccine containing ALC-0315. Each Defendant intends that the ~~other Defendant makes~~others make, ~~uses~~use, ~~sells~~sell, ~~offers~~offer to sell, ~~distributes, exports~~distribute, export, and/or ~~imports~~import Defendants' COVID- 19 Vaccine and/or its components comprising the infringing ALC-0315 biodegradable lipid with the knowledge and specific intent that the ~~other Defendant~~others will directly infringe Alnylam's '933 Patent. Defendants further intend that each end user, distributor, importer and/or exporter make, use, sell,

offer to sell, distribute, export, and/or import Defendants' COVID-19 Vaccine and/or its components comprising the infringing ALC-0315 biodegradable lipid with the knowledge and specific intent that such end user, distributor, importer, and/or exporter end-users directly infringe Alnylam's '933 Patent.

79.  Defendants' infringement has damaged and will continue to damage Alnylam, which is entitled to recover the damages resulting from Defendants' wrongful acts in an amount to be determined at trial, and in any event no less than a reasonable royalty.

**SECOND CAUSE OF ACTION (Infringement of the '979 Patent)**

80.  Alnylam realleges and incorporates by reference the allegations contained in the foregoing paragraphs.

81.  On information and belief, Defendants have infringed and will continue to

26

infringe at least one of the asserted claims of the '979 Patent, pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making, using, selling, or offering to sell within the United States or importing into the United States Defendants' COVID-19 Vaccine containing Defendants' Infringing LNPs without authority.

82.     Defendants without authority have infringed and will continue to infringe at least one of the asserted claims of the '979 Patent pursuant to 35 U.S.C. § 271(b) by actively inducing the manufacturing, using, selling, or offering for sale within the United States or importing into the United States Defendants' COVID-19 Vaccine containing Defendants' Infringing LNPs. Each Defendant intends that the other Defendant makes, uses, sells, offers to sell, distributes, exports, and/or imports Defendants' COVID-19 Vaccine and/or its components comprising the infringing LNPs made with Defendants' Infringing LNPs with the knowledge and specific intent that the other Defendant will directly infringe Alnylam's '979 Patent. Defendants further intend that each

end user, distributor, importer and/or exporter make, use, sell, offer to sell, distribute, export, and/or import Defendants' COVID-19 Vaccine and/or its components comprising Defendants' Infringing LNPs with the knowledge and specific intent that such end user, distributor, importer, and/or exporter end-users directly infringe Alnylam's '979 Patent.

83.     Defendants' infringement has damaged and will continue to damage Alnylam, which is entitled to recover the damages resulting from Defendants' wrongful acts in an amount to be determined at trial, and in any event no less than a reasonable royalty.

**THIRD CAUSE OF ACTION**
**(Infringement of the '229 Patent)**

84.     Alnylam realleges and incorporates by reference the allegations contained in the foregoing paragraphs.

27

85.    On information and belief, Defendants have infringed and will continue to infringe at least one of the asserted claims of the '229 Patent, pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making, using, selling, or offering to sell within the United States or importing into the United States Defendants' COVID-19 Vaccine containing Defendants' Infringing LNPs without authority.

86.    Defendants without authority have infringed and will continue to infringe at least one of the asserted claims of the '229 Patent pursuant to 35 U.S.C. § 271(b) by actively inducing the manufacturing, using, selling, or offering for sale within the United States or importing into the United States Defendants' COVID-19 Vaccine containing Defendants' Infringing LNPs. Each Defendant intends that the other Defendant makes, uses, sells, offers to sell, distributes, exports, and/or imports Defendants' COVID-19 Vaccine and/or its components comprising the infringing LNPs made with Defendants' Infringing LNPs with the knowledge and specific intent that the other Defendant will directly infringe Alnylam's '229 Patent. Defendants further intend that each

end user, distributor, importer and/or exporter make, use, sell, offer to sell, distribute, export, and/or import Defendants' COVID-19 Vaccine and/or its components comprising Defendants' Infringing LNPs with the knowledge and specific intent that such end user, distributor, importer, and/or exporter end-users directly infringe Alnylam's '229 Patent.

87.    ~~50.~~Defendants' infringement has damaged and will continue to damage Alnylam, which is entitled to recover the damages resulting from Defendants' wrongful acts in an amount to be determined at trial, and in any event no less than a reasonable royalty.

**PRAYER FOR RELIEF**

WHEREFORE, Alnylam prays for a judgment in its favor and against Defendants and

respectfully requests the following relief:

A.   A judgment that Defendants directly infringe the '933 Patent;

B.   A judgment that Defendants induce infringement of the '933 Patent;

C.   A judgment that Defendants directly infringe the '979 Patent;

D.   A judgment that Defendants induce infringement of the '979 Patent;

E.   A judgement that Defendants directly infringe the '229 Patent;

F.   A judgment that Defendants induce infringement of the '229 Patent;

G.   C. Damages or other monetary relief, including post-judgment monetary relief and

pre- and post-judgment interest;

H.   D. Costs and expenses in this action; and

I.   E. An order awarding Alnylam any such other relief as the Court may deem just

and proper under the circumstances, except that Alnylam does not seek any form of injunctive

relief.

**<u>JURY DEMAND</u>**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Alnylam hereby demands

a jury trial as to all issues so triable.

OF COUNSEL:

William G. Gaede, III
MCDERMOTT WILL & EMERY LLP
415 Mission Street, Suite 5600
San Francisco, CA 94105 (650)
815-7400

Sarah Chapin Columbia
Sarah J. Fischer
MCDERMOTT WILL & EMERY LLP
200 Clarendon Street, Floor 58
Boston, MA 02116-5021 (617)
535-4000

Ian B. Brooks
MCDERMOTT WILL & EMERY LLP
500 N. Capitol Street NW
Washington, DC 20003 (202)
756-8000

29

MCDERMOTT WILL & EMERY LLP

*/s/ Ethan H. Townsend*
Ethan H.
Townsend
(#5813) The
Nemours
Building
1007 North Orange Street, 10th
Floor Wilmington, DE 19801
(302) 485-3910
ehtownsend@mwe.com

*Attorneys for Alnylam*
*Pharmaceuticals, Inc.*

30

Document comparison by Workshare Compare on Tuesday, February 14, 2023
8:51:50 PM

| Input: | |
|---|---|
| Document 1 ID | file://C:\Users\tdunker\Desktop\Alnylam Complaint (Pfizer) (1).pdf |
| Description | Alnylam Complaint (Pfizer) (1) |
| Document 2 ID | file://C:\Users\tdunker\Desktop\Pfizer Amended Complaint for Patent Infringement.pdf |
| Description | Pfizer Amended Complaint for Patent Infringement |
| Rendering set | Standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 335 |
| Deletions | 167 |
| Moved from | 3 |
| Moved to | 3 |
| Style changes | 0 |
| Format changes | 0 |
| Total changes | 508 |

---

[4] Upon information and belief, BNT162b2 was the code name for Defendants' mRNA COVID-19 Vaccine during clinical trials. (Exhibit 54 at 21.)