## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ALNYLAM PHARMACEUTICALS, INC. | |
| Plaintiff, | Civil Action No. 22-cv-336-CFC (CONSOLIDATED) |
| v. | |
| PFIZER INC., PHARMACIA & UPJOHN CO. LLC, BIONTECH SE, and BIONTECH MANUFACTURING GMBH, | |
| Defendants. | |

## OPENING BRIEF IN SUPPORT OF ALNYLAM PHARMACEUTICALS, INC.'S MOTION UNDER O2 MICRO FOR RESOLUTION OF THE CLAIM CONSTRUCTION DISPUTE AND/OR PARTIAL DAUBERT MOTION FOR DR. STEVEN R. LITTLE

# Table of Contents

I.    Statement of the Nature and Stage of the Proceedings ..................................2

II.   Summary of Argument ...................................................................................3

III.  Statement of Facts..........................................................................................3

    A.    The Underlying Science Is Undisputed....................................................3

    B.    Defendants Consistently Refer to Their Accused Lipid (ALC-0315) – which has a pKa of 6.09 - As a "Cationic Lipid".....................................................................................................5

    C.    Defendants Never Sought a Predominant Species Limitation ..................................................................................................6

IV.   Argument ........................................................................................................9

    A.    Legal Standard.........................................................................................9

        1.    Claim Construction .........................................................................9

        2.    Daubert Motions ...........................................................................10

    B.    The Court Should Conduct Additional Claim Construction Proceedings........................................................................10

        1.    The Written Description Does Not Support a Predominant Species Limitation...............................................11

        2.    The Art Does Not Support Reading in a Predominant Species Limitation as Part of a POSA's Understanding..........................................................15

        3.    Alnylam's Representations Do Not Support the Inclusion of a "Predominant Species" Limitation. ...................17

        4.    Because this Dispute Cannot Be Resolved on the Intrinsic Record, the Court Should Order Additional Claim Construction Proceedings ...........................20

    C.    Should the Court Not Revise the Construction of "Cationic Lipid," Defendants Should Be Precluded from Offering Any Opinion that is Inconsistent with it...........................20

V.    Conclusion ....................................................................................................21

## Table of Authorities

**Page(s)**

**Cases**

*Actelion Pharms. LTD v. Mylan Pharms. Inc.*,
85 F.4th 1167 (Fed. Cir. 2023) ...............................................................20

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
805 F.3d 1368 (Fed. Cir. 2015) ..............................................................14

*Alnylam Pharm., Inc. v. Moderna Inc.*,
No. 23-cv-580 (D. Del.), D.I. 82 .............................................................19

*Cordis Corp. v. Bos. Sci. Corp.*,
561 F.3d 1319 (Fed. Cir. 2009) ...............................................................21

*Daubert v. Merrell Dow Pharm., Inc.*,
509 U.S. 579 (1993)..................................................................................10

*Eon Corp. IP Holdings v. Silver Spring Networks*,
815 F.3d 1314 (Fed. Cir. 2016) .................................................................9

*Every Penny Counts, Inc. v. Am. Express Co.*,
563 F.3d 1378 (Fed. Cir. 2009) .................................................................2

*Integra Lifesciences Corp. v. HyperBranch Med. Tech., Inc.*,
2018 WL 1785033 (D. Del. Apr. 4, 2018) .........................................10, 21

*Intuitive Surgical, Inc. v. Auris Health, Inc.*,
549 F. Supp. 3d 362 (D. Del. 2021)....................................................19, 21

*Knowles Elecs. LLC v. Iancu*,
886 F.3d 1369 (Fed. Cir. 2018) ...............................................................11

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
521 F.3d 1351 (Fed. Cir. 2008) .................................................................9

*In re Papst Licensing Digital Camera Pat. Litig.*,
778 F.3d 1255 (Fed. Cir. 2015) .............................................................9, 10

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) ...............................................................14

*Prolitec Inc. v. ScentAir Techs., LLC,*
 2023 WL 8697973 (D. Del. Dec. 13, 2023) ........................................................10

**Other Authorities**

Federal Rule of Evidence 702 ..............................................................................10

After nearly three years of litigation and three separate *Markman* proceedings, the parties have a fundamental disagreement on the meaning of "cationic lipid." Defendants created this dispute by offering opinions and arguments that effectively re-construe "cationic lipid," while at the same time arguing they are applying the Court's construction. Defendants' "interpretation" of "cationic lipid," is inconsistent with the Court's construction, the Patents-in-Suit, the science, and the relevant case law.

Defendants' litigation-inspired noninfringement position regarding "cationic lipid" is based on the incorrect and impermissible addition of a "predominant species" requirement into the Court's construction of "cationic lipid." The Court construed "cationic lipid" as used in the claims as "plain and ordinary meaning, which is 'a lipid that is positively charged or that may be protonated at physiological pH.'" Defendants' "interpretation" restricts the Court's construction to require that the *predominant species* is protonated at physiological pH.

The "predominant species" language, which is not in the claims or the Court's construction *and was never advanced by Defendants when the Court construed the claim*, appears only *once* in the Patents-in-Suit and, even then, only *with "certain embodiments*." The remainder of the disclosure contains no predominant species limitation at physiological pH (7.4). It instead repeatedly describes "cationic lipids" as protonatable lipids that *are not* predominantly protonated at physiological pH

1

(7.4) but are predominantly protonated at lower pHs.  Defendants' "interpretation," advanced through their expert Dr. Little, effectively reconstrues the claims to read out the vast majority of the written description.   It should be soundly rejected.

The parties' dispute over the meaning of "cationic lipid" cannot be put to the jury, as claim construction is the exclusive province of the Court.  *Every Penny Counts, Inc. v. Am. Express Co.*, 563 F.3d 1378, 1383 (Fed. Cir. 2009).  The Court should address the parties' dispute, either by engaging in additional claim construction proceedings or by confirming that its construction of "cationic lipid" does not require a "predominant species" limitation.  The Court should not, as it has recently suggested, condone an implicit, unspoken limitation that is not part of the claim language or the claim construction and is contrary to the weight of the written description.  Should the Court affirm its construction, without Defendants' added "predominant species" limitation, then the Court must strike the portions of Dr. Little's expert report that rely on the incorrect construction of "cationic lipid" and preclude Defendants from offering any argument regarding predominant species.

## I.     Statement of the Nature and Stage of the Proceedings

Alnylam sued Defendants, alleging that Defendants' COVID-19 Vaccines infringe the Asserted Patents because they contain the cationic lipid ALC-0315. After the first *Markman* hearing, the Court entered a construction of "cationic lipid" as "[p]lain and ordinary meaning, which is 'a lipid that is positively charged or that

may be protonated at physiological pH.'"  D.I. 109.  The Court held two additional *Markman* hearings, where Defendants did not raise any issues regarding "cationic lipid."  During expert discovery it became clear that the parties had fundamentally different understandings of "cationic lipid."

## II.    Summary of Argument

1. Alnylam requests that the Court address the parties' dispute over the meaning of "cationic lipid" by either confirming the Court's original construction, which has no "predominant species" limitation, or engaging in additional claim construction proceedings.

2. To the extent the Court confirms its original construction, as above, Alnylam requests that the Court strike Dr. Little's opinions regarding the predominant species limitation and preclude Defendants from offering any such arguments at trial.

## III.    Statement of Facts

### A.    The Underlying Science Is Undisputed

The purpose of the claimed invention is clear – the Patents-in-Suit disclose a novel class of cationic lipids, which can be used to form lipid particles for the delivery of nucleic acids.  The science behind these lipids is undisputed.  Both sides agree the claimed cationic lipids[1] can exist in both largely neutral and protonated

---

[1] The Court's claim construction includes permanently positively charged cationic lipids, but those lipids are not relevant to the parties' disputes here.

states depending on the surrounding pH and the pKa of the cationic lipid.    The parties agree the amount of a lipid that is protonated at any given snapshot in time can be determined by the pKa of the lipid and the pH of the solution.  The experts have explained that when the pKa of a lipid is equal to the pH of the surrounding solution, there will be an equal amount of protonated and unprotonated lipid.  ████

████████████████████████████████████████████████████████

████████████████████████  It is undisputed that when the pH is above the pKa, less than half the molecules will be protonated at any moment in time and that when the pH is below the pKa, more than half will be protonated at any moment in time.  ████████████████████████████████

██████████████████████████████████

████████████████

████████████████████████████████████████████

██████████████████

This fundamental relationship between pH and pKa has been understood for decades.  ████████████████████

4

B.    Defendants Consistently Refer to Their Accused Lipid (ALC-0315) – which has a pKa of 6.09 - As a "Cationic Lipid"

It is undisputed that ALC-0315 has a pKa of 6.09[2] and that therefore its "predominant species" is not protonated at physiological pH. ███████████

████████████████████████████████████████████████

████████████████████████████

- ████████████████████████████████████████

████████████████████████████████████

[2]████████████████████████████████████

5



### C.   Defendants Never Sought a Predominant Species Limitation

Initially, Defendants sought construction of "cationic lipid." Alnylam did not. Defendants proposed "a lipid having one or two fatty acid or fatty aliphatic chains and an amino acid containing head group that may be protonated to form a cationic lipid at physiological pH," arguing this was supported by an "express definition." D.I. 63, 1; D.I. 86, 9, 21-25. The Court disagreed.  D.I. 109 (Court construing "cationic lipid" based on plain and ordinary meaning, in accordance with Alnylam's proposed construction).[4]   Defendants' proposed construction, and failed lexicography arguments, were an attempt to manufacture a noninfringement argument–because ALC-0315 does not have an "amino acid containing head group." The Court's construction, which did not include the "amino acid containing head

---

[3] ██████████████████████████████████████████

[4]   The parties effectively ended up agreeing on the construction after the Court rejected Defendants' limiting construction.  *See D.I.* 86 at 15 and 21

6

group" limitation, foreclosed that noninfringement argument, leaving Defendants searching for another.

Defendants turned to "cationic lipid" and quietly and unilaterally added a "predominant species" limitation, which had never been raised, briefed, or argued. At no point during the claim construction briefing, nor during any of the *Markman* hearings, did Defendants request a "predominant species" limitation be imported into the Court's construction of "cationic lipid." Indeed, counsel confirmed as much on the record a few months ago. ████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████

The question of whether "cationic lipid" as used in the claims of the Patents-in-Suit requires that the predominant species (>50%) of the lipid be positively charged at physiological pH was first brought to the Court's attention more than a year after the Court issued its claim construction. During the three-page briefing and hearing on Defendants' motion to strike certain portions of Dr. Scheidt's report (D.I. 225 and D.I. 265), Defendants' counsel first raised the concept that the Court's construction of "cationic lipid" should be read as including a "predominant species" limitation.

7

At the hearing, the Court asked if it should engage in claim construction. Defendants discouraged the Court from addressing their newly added limitation through an appropriate claim construction process, preferring instead to take a shortcut to its desired result–striking Dr. Scheidt's opinions without the risk of appellate scrutiny. ███████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████

At that same discovery hearing, the Court affirmatively asked Defendants if the meaning of cationic lipid had changed since the priority date. Defendants' counsel represented that it had. ████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████  The Court then further sought to clarify if Defendants' expert would testify to the jury regarding the difference in meaning between the priority date and today and ██████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██ Instead of directly answering the question, Defendants instead relied on the same flawed evidence discussed below. ███████████████████████████

███████████████

Despite Defendants counsels' representations to the Court, Defendants' expert reports offer no evidence or opinion that the plain and ordinary meaning of cationic lipid has changed since the priority date. D.I. 265, 27:7-11. Further, addressing art Defendants' expert report advanced, ████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████

## IV. Argument

### A. Legal Standard

#### 1. Claim Construction

"When the parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008). It is "legal error" for a court to leave a "question of claim scope unanswered, leaving it for the jury to decide." *Eon Corp. IP Holdings v. Silver Spring Networks*, 815 F.3d 1314, 1319 (Fed. Cir. 2016). As a result, "a district court may (and sometimes must) revisit, alter, or supplement its claim constructions (subject to controlling appellate mandates) to the extent necessary to ensure that final constructions serve their purpose of genuinely clarifying the scope of claims for the finder of fact." *In re*

9

*Papst Licensing Digital Camera Pat. Litig.*, 778 F.3d 1255, 1261 (Fed. Cir. 2015). "While it is preferable for claim construction disputes to be fully vetted and resolved at the time of formal claim construction proceedings, the court has a duty to resolve fundamental disputes about the meaning of claims even when the disputes arise after claim construction proceedings are concluded." *Prolitec Inc. v. ScentAir Techs., LLC*, 2023 WL 8697973, at *5 (D. Del. Dec. 13, 2023) (collecting cases).

　　　　2.　　　Daubert Motions

In *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993), the Supreme Court explained that Rule 702 creates "a gatekeeping role for the [trial] judge" in order to "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." An expert's testimony that contradicts a court's claim construction should be struck as unreliable. *Integra Lifesciences Corp. v. HyperBranch Med. Tech., Inc.*, 2018 WL 1785033, at *4 (D. Del. Apr. 4, 2018).

　　　　B.　　　The Court Should Conduct Additional Claim Construction Proceedings

The parties' expert reports confirm that there is a fundamental disagreement regarding the meaning of "cationic lipid," as construed by the Court. Consistent with Federal Circuit case law, the Court should resolve this dispute as a matter of law in claim construction.

10

A claim construction process will expose the frailty in Defendants' position. Including the "predominant species" limitation would exclude innumerable disclosed embodiments (including preferred embodiments) and be contrary to the written description.   The Court has never addressed or considered this intrinsic evidence, given Defendants have never raised the issue to the Court.   *See Knowles Elecs. LLC v. Iancu*, 886 F.3d 1369, 1375 (Fed. Cir. 2018).

> 1.    The Written Description Does Not Support a Predominant Species Limitation

Defendants are reading into the Court's construction of "cationic lipid" the additional limitation that the predominant species (>50%) of the lipid be protonated at physiological pH (7.4), *i.e.*, that the cationic lipid have a pKa above 7.4.  Reading in that limitation would read out many embodiments and is contrary to express language identifying "cationic lipids" as those with a pKa below 7.4.

The Patents-in-Suit disclose that *"[t]he cationic lipid preferably has a pKa of from about 4 to about 7 (such as 6.0 to 6.5) … [t]he cationic lipid preferably has one, two, three, four or more of the properties listed below: (i) a pKa of from about 4 to about 7 (such as 6.0 to 6.5) ..."* '933 Patent,[5] 23:44-58 (emphasis added).  It is an indisputable fact that these lipids would not be more than 50% protonated at physiological pH, because their pKa values are below 7.4.

---

[5] Attached as Ex. 19.

The Patents-in-Suit describe "the cationic lipid of the present invention" as having a "Primary Group" that "comprises a protonatable group having a pKa of from about 4 to about 13, more preferably from about 5 to about 8 (*e.g. from about 5 to about 7, or from about 5 to about 6.5, or from about 5.5 to about 6.5, or from about 6 to about 6.5*)." '933 Patent, 16:1-52 (emphasis added). While the broadest of these ranges embraces embodiments with pKa values above 7.4, *all the ranges* include cationic lipids with pKa values below 7.4.

The Patents-in-Suit continue, "[f]or example, the lipids can have a pKa of about 4 to about 7, e.g., from about 5 to about 7, such as from about 5.5 to about 6.8, when incorporated into lipid particles," and explains that "[s]uch lipids may be cationic at a lower pH formulation stage, while particles will be largely (though not completely) surface neutralized at physiological pH around pH 7.4." '933 Patent at 395:67-396:31. Defendants' narrow interpretation of the Court's construction would read out these disclosures and any embodiments with a pKa below 7.4.

The patent identifies as "cationic lipids" column after column of structures. *See, e.g.*, '933 at 36:53-37:20; 58:40-61:23; 76:18-341:34; 341:34-395:25. A POSA reviewing the columns of such "cationic lipids" would understand that many of these disclosed lipids have pKa values below 7.4, and therefore would fall outside Defendants' overly narrow interpretation of the Court's construction. ▮▮▮▮▮

▮▮▮▮▮▮

12

Nearly all the cationic lipids disclosed in the Patents-in-Suit contain at least one tertiary amine. ██████████████████████ A POSA would understand that a tertiary amine, as a free cationic lipid, has a pKa of approximately 9 to 10, and that when incorporated into a lipid particle, the pKa would be between 6 and 8.[6] ██ ████████████████████ A POSA, looking at these hundreds of structures, would not see anything that suggest that the term "cationic lipid" should be limited to only those lipids in lipid particles with pKa values over 7.4.

As evidence of this inherent property, ████████████████████ █████████████████████████████████ █████████████████████████████████ █████████████████████████████████ ███████████████

None of the claims include a "predominant species" limitation, whereas many claims expressly cover cationic lipids with a pKa lower than 7.4, *i.e.*, where the predominant species *would not be* protonated at physiological pH. Claim 18 of the '933 Patent requires for the claimed "cationic lipid" that "the lipid has a pKa in the range of about 4 to about 11." *See also* '933 Patent, Claim 1 (same limitation); '979 Patent,[7] Claim 3 (same limitation). Claim 23 of the '933 Patent narrows the pKa

---

[6] The parties agree the claimed pKa is the apparent pKa when incorporated into a lipid particle. ██████████████████████████████████
[7] Attached as Ex. 20.

range to "wherein the lipid has a pKa of from about 5 to about 7 when incorporated into a lipid particle." *See also* '933 Patent, Claim 17 (providing the even narrower range "wherein the pKa of the cationic lipid is 6.0 to 7.0."). Other claims are in accord. '933 Patent, Claims 10 ("wherein the cationic lipid has a pKa value of from about 4 to about 7."); 11 ("wherein the cationic lipid has a pKa value of from about 6 to about 6.5"); 13 ("cationic lipid has: … a pKa of from about 4 to about 7"). These claimed ranges of "cationic lipids" with pKa values below 7.4 are completely inconsistent with a requirement that the "predominant species" must be protonated at a pH of 7.4.

Against the full weight of the plain claim language, the written description, and the structures themselves, there is only a single reference in the Patents-in-Suit, framed in terms of "certain embodiments," to "predominant species." '933 Patent, 395:53-63. To read that single reference to certain embodiments into the Court's claim construction would be clear error, as the Federal Circuit has repeatedly cautioned against. *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 805 F.3d 1368, 1376 (Fed. Cir. 2015); *Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed. Cir. 2005).

Finally, the purpose of these lipids does not require a pKa above 7.4. The Patents-in-Suit describe a new class of cationic lipids that can be incorporated into a lipid particle for the delivery of nucleic acids. *See e.g.*, '933 Patent, Abstract, 1:61-62; 28:39-40; 76:22-24; 334:66-67; 406:36-38.

14

It was known before the priority date that lipids with pKa values below 7.0 (and therefore necessarily below 7.4) worked well for the formation of lipid particles. *See infra* §IV.B.2. As such, a POSA reading the Patents-in-Suit as a whole would have no reason to believe there was any requirement that the disclosed cationic lipids be more than 50% protonated at physiological pH. ████████

████████

2.    The Art Does Not Support Reading in a Predominant Species Limitation as Part of a POSA's Understanding

The art on which Defendants' experts rely directly contradicts Defendants read-in limitation and is contrary to counsel's recent representation to the Court that the plain and ordinary meaning of cationic lipid changed over time. The literature spanning from 2010 to 2022 provide pKa values for "cationic lipids," all of which are consistently below 7.4. *See supra* §III.A.

Defendants' expert explains, ████████████████

████████████████████

████████████████████

████████████████████

████████████████████

████████████████████

████████████████████

████████████████████

15

████████████████████████████████████████████████████

██████████████████████████

Defendants' expert summarizes, ████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████    ██████████████

████████████████████████████████  None of these cationic lipids

have pKa values at or above 7.4.

Similarly, Defendants' expert ████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████

3.    Alnylam's Representations Do Not Support the Inclusion of a "Predominant Species" Limitation.

Defendants and their expert cite supposed Alnylam representations to support a "predominant species" requirement.  They ignore key facts that belie the cherry-picked, out-of-context statements advanced.



Simply saying that the amount of a lipid that is protonated is pH dependent (which is an undisputed scientific fact) does not lead to the conclusion that "may be protonated" requires a specific degree of protonation, much less a "predominant species" limitation.

Dr. Little quotes a single parenthetical from Alnylam's original claim construction brief that Defendants previously cited in briefing their September motion to strike portions of Dr. Scheidt's Opening Report.

17



This argument ignores that, at the time, Defendants were seeking a narrow construction of cationic lipid that required "a lipid having one or two fatty acid or fatty aliphatic chains and an amino acid containing head group that may be protonated to form a cationic lipid at physiological pH." D.I. 86, 15.  Alnylam's brief, in that context, emphasized, as Alnylam has consistently argued, that there was no requirement in the Patents-in-Suit that the site of protonation be in "an amino acid containing head group." D.I. 86, 15-16; '933 Patent, 395:52-63.

Defendants'

---

[8] In fact, in Defendants' own responsive claim construction briefing, they deride the relevance of Alnylam's citation by stating "this passage is not an affirmative statement that a protonatable group can be anywhere in a cationic lipid, such that a cationic lipid can have a neutral head group.  In any case, this single passage falls well short of establishing a plain and ordinary meaning, particularly given that the term "cationic lipid" had no single meaning."  D.I. 86, 26.

original proposed head group construction was "a group that may be protonated at physiological pH." D.I. 86, 38. Defendants subsequently dropped "at physiological pH" without explanation. Regardless of Defendants' shifting positions, Alnylam has been consistent–the site of protonation in the claimed cationic lipids can be either in the "head group" or the "central moiety," and, in support, that pyridine, which is depicted in the Patents-in-Suit as a "head group," could not be the primary site of protonation.

Dr. Little's reference to inventor testimony likewise cannot support Defendants' construction. Reliance on inventor testimony to support a reading in of exemplary embodiments is disfavored. *See Intuitive Surgical, Inc. v. Auris Health, Inc.*, 549 F. Supp. 3d 362, 370 (D. Del. 2021). Further, the inventors themselves never stated that cationic lipids required the predominant species to be protonated. These references, taken out of the context, are not an admission that "cationic lipid" includes a predominant species requirement at pH 7.4.[9]

---

[9] Dr. Little's quotation from counsel for Alnylam at the Moderna claim construction hearing is no better. As in the September hearing in this case, Alnylam's counsel made clear that the Court's construction of "lipid compound" should *not* include a reference to "predominant species." *See Alnylam Pharm., Inc. v. Moderna Inc.*, No. 23-cv-580 (D. Del.), D.I. 82 at 55:5-13.

19

>    4.    Because this Dispute Cannot Be Resolved on the Intrinsic
>          Record, the Court Should Order Additional Claim Construction
>          Proceedings

The intrinsic record does not support the addition of a predominant species limitation, nor is it "implicit" in the ordered claim construction, as the Court suggested in the September discovery hearing.    D.I. 265, 40:10-25.  Defendants' new construction is at odds with the intrinsic record and one that Alnylam and its experts plainly dispute. ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌ ▌▌▌▌▌ while the written description uses it only once in connection with "certain embodiments," the Court would need to address such extrinsic evidence.  "In such cases, the district court must make subsidiary factual findings about that extrinsic evidence, and such findings are the evidentiary underpinnings of claim construction."  *Actelion Pharms. LTD v. Mylan Pharms. Inc.*, 85 F.4th 1167, 1174 (Fed. Cir. 2023) (quotations omitted).  To the extent that the Court is inclined to alter its construction, it should afford the parties the opportunity to present a fully developed factual record.

>    C.    Should the Court Not Revise the Construction of "Cationic Lipid,"
>          Defendants Should Be Precluded from Offering Any Opinion that is
>          Inconsistent with it

If the Court confirms "cationic lipid" does not include a "predominant species" limitation, the Court should preclude Defendants from offering any evidence inconsistent with the Court's construction. ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌

20

██████████████████████████████████████████████████████

███████████████████████████████████████████  Those opinions

should be struck. *Integra Lifesciences*, 2018 WL 1785033, at *4. Specifically, Paragraphs 26, 66-72, 81-84, 88-90, 92-114, and 118-20 of Dr. Little's Rebuttal Report should be struck. Dr. Little should also be precluded from offering any opinions that "cationic lipid" requires that the predominant species be protonated at physiological pH. The proper analysis for whether an expert applied the Court's construction is "whether the expert employed the same effective meaning for the term as that expressed in the court's construction." *Integra Lifesciences*, 2018 WL 1785033, at *4.

Defendants have improperly sought to bring claim construction arguments, which were never raised during the *Markman* proceedings, into expert discovery. Such testimony is improper and should be struck. *Intuitive Surgical* 549 F. Supp. 3d, 370 (citing *Cordis Corp. v. Bos. Sci. Corp.*, 561 F.3d 1319, 1337 (Fed. Cir. 2009)) ("Auris's attempt to introduce claim construction through expert testimony is improper.").

## V.   Conclusion

For the reasons stated above, Alnylam respectfully requests that the Court address this claim construction dispute.

Dated December 20, 2024

OF COUNSEL:

William G. Gaede, III
Anisa Noorassa
McDermott Will & Emery LLP
415 Mission Street, Suite 5600
San Francisco, CA 94105
(650) 815-7400

Sarah Chapin Columbia
Sarah J. Fischer
McDermott Will & Emery LLP
200 Clarendon Street, Floor 58
Boston, MA 02116-5021
(617) 535-4000

Ian B. Brooks
Timothy Dunker
McDermott Will & Emery LLP
500 N. Capitol Street NW
Washington, DC 20003
(202) 756-8000

Bhanu K. Sadasivan
McDermott Will & Emery LLP
650 Live Oak Ave., Suite 300
Menlo Park, CA 94025-4885
(650) 815-7537

Mandy H. Kim
McDermott Will & Emery LLP
18585 Jamboree Road, Suite 250
Irvine, CA 92612-2565
(949) 757-6061

Respectfully submitted,

McDermott Will & Emery LLP

*/s/ Ethan H. Townsend*

Ethan H. Townsend (#5813)
The Brandywine Building,
1000 North West Street, Suite 1400,
Wilmington, DE 19801
(302) 485-3910
ehtownsend@mwe.com

*Attorneys for Plaintiff*
*Alnylam Pharmaceuticals, Inc.*

22

## WORD COUNT CERTIFICATION

Pursuant to this Court's Standing Order Regarding Briefing in All Cases, dated November 10, 2022, the undersigned counsel hereby certifies that the foregoing brief contains 4,904 words, which were counted by using the word count feature in Microsoft Word, in 14-point Times New Roman font.

*/s/ Ethan H. Townsend*
Ethan H. Townsend (#5813)

23

## CERTIFICATION OF SERVICE

The undersigned counsel certifies that a true and correct copy of the foregoing

document was served on December 20, 2024 on the following counsel via EMAIL.

Arthur G. Connolly, III
Alan R. Silverstein
CONNOLLY GALLAGHER LLP
1201 North Market Street, 20th Floor
Wilmington, DE 19801
302-757-7300
aconnolly@connollygallagher.com
asilverstein@connollygallagher.com

Sara Tonnies Horton
WILLKIE FARR & GALLAGHER LLP
300 North LaSalle Dr.
Chicago, IL 60654
312-728-9000
shorton@willkie.com

Michael W. Johnson
Dan Constantinescu
Brian Frino
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, NY 10019
212-728-8000
mjohnson1@willkie.com
dconstantinescu@willkie.com
bfrino@willkie.com

*Attorneys for Defendants Pfizer Inc.*
*and Pharmacia & Upjohn Co. LLC*

Jack B. Blumenfeld, Jeremy A. Tigan
MORRIS, NICHOLS, ARSHT &
TUNNELL LLP
1201 North Market St., P.O. Box 1347
Wilmington, DE 19899
jblumenfeld@morrisnichols.com
jtigan@morrisnichols.com

Charles B. Klein, Claire Fundakowski,
Jovial Wong, Sharon Lin McIntosh
WINSTON & STRAWN LLP
1901 L Street NW
Washington, D.C. 20036
cklein@winston.com
cfundakowski@winston.com
jwong@winston.com, slin@winston.com

Katherine L. Kyman, Brian L. O'Gara
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, IL 60601-9703
kkyman@winston.com
bogara@winston.com

Ashley Graham
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166-4193
agraham@winston.com

*Attorneys for Defendants BioNTech SE*
*and BioNTech Manufacturing GmbH*


/s/ Ethan H. Townsend
Ethan H. Townsend (#5813)

24